S93A0984. CALDWELL v. THE STATE.
(436 SE2d 488)

HUNSTEIN, Justice.

Subsequent to this Court's consideration of matters raised in *Caldwell v. State*, 260 Ga. 278 (393 SE2d 436) (1990), James Robert Caldwell was tried and convicted of murder, rape, aggravated child

molestation, and aggravated assault.[1] Consecutive life sentences were imposed on the murder and rape counts, with a 30-year sentence on the aggravated child molestation and a 20-year sentence on the aggravated assault conviction. Caldwell appeals from the denial of his motion for new trial.

1. Construed to uphold the verdict, the evidence adduced at trial established that Kay Caldwell met appellant when she was 14 years old and he was in his 20's. They dated and had sex but did not enter into their common-law marriage until several years later. The couple had two children, Sara and Ben. Appellant, who had abandoned his family shortly after Ben's birth, was accepted back into the family after an eight-and-one-half-year absence. At the time of the crimes, Sara was twelve years old but was physically mature for her age and looked more like she was fifteen; Ben was ten years old. On Sunday, August 15, appellant and Sara went on a day-long fishing trip to an area he and Ms. Caldwell had frequented when they first dated. That night, appellant and Sara stayed up watching TV after Ms. Caldwell and Ben went to bed; the next morning, when Ms. Caldwell found appellant on the living room couch wearing the prior day's work uniform, he told her he had spent the night watching TV. Ms. Caldwell testified that she had been awakened in the middle of the night by the sound of appellant leaving the master bedroom; two adult movies, one depicting sexual acts involving women dressed as young girls, which were usually kept by appellant in the master bedroom closet, were found under the living room couch later that day.

Ben testified that he was awakened by a clanging noise, but returned to sleep after appellant, wearing work pants but no shirt, came to his door and reassured him. He awoke sometime later when he heard appellant, standing in the bedroom doorway, calling his name. Seconds later Ben was hit on the right side of his head. When he regained consciousness, he found a gaping hole in his chest and a sash tied tightly around his throat. After his attempt to cut the sash proved futile, Ben went into the bathroom to clean his wounds. He was found unconscious in the bathtub by his mother, upon her return from work. Medical testimony established that Ben had suffered a profound loss of blood from numerous stab wounds (consistent with a knife four to six inches long), a loss of oxygen from near-strangulation, and a fractured skull, which expert testimony established was

---

[1] The crimes occurred on August 16, 1988. Caldwell was indicted December 7, 1988 in Cobb County. The case was transferred to Muscogee County, where Caldwell was tried and found guilty on all counts on February 9, 1991. He was sentenced on February 12, 1991. His motion for new trial, filed March 6, 1991 and amended on January 3, 1993, was denied January 11, 1993. A notice of appeal was filed February 8, 1993. The transcript was certified on March 25, 1993 and the appeal was docketed on April 1, 1993. The appeal was submitted for decision without oral argument on May 14, 1993.

consistent with being hit by an iron skillet. The handle to an iron skillet was found in Sara's room.

Sara's body was found on her bed. Physical evidence established that she had been raped in the master bedroom. She had then been strangled to death with a piece of drawstring taken from a jogging suit in the living room closet. There was no evidence to suggest prior sexual activity by the victim. A pubic hair taken from Sara's panties was consistent with appellant's pubic hair; semen in her vaginal tract was consistent with appellant's blood group. Appellant's DNA was present in a DNA analysis of the blood and semen; expert testimony was adduced that the probability of another having the same DNA was one in 258,930,000. The pattern of scratches on appellant's upper torso was consistent with Sara's fingernails, torn in a manner consistent with defensive wounds.

Although the police, who arrived at the scene before appellant, did not allow him in the apartment, blood consistent with appellant's and Ben's blood type was found on the ignition switch of appellant's truck and his keys. A boot print made in blood on the back door of the apartment had a tread consistent with the boots appellant was wearing that day. The day Ben regained consciousness, appellant went to visit a friend, phoned his wife to ask if he could bring her a meal at the hospital, then disappeared. Three days later, when he called the friend to ask for a ride home, he requested that she not "tell anyone where I am."

This court does not weigh the evidence on appeal or resolve conflicts in trial testimony. Rather, it is the function of this court to examine the evidence in the light most favorable to the verdict and to determine whether any rational trier of fact could have found appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Doing so, we find the standard of *Jackson v. Virginia* has been met in this case.

2. The trial court erred by not merging the aggravated child molestation conviction into the rape conviction for sentencing purposes. As we noted in *Pruitt v. State*, 258 Ga. 583, 589 (13) (e) (373 SE2d 192) (1988), "the offense of child molestation may be included as a matter of fact in an indictment charging the offense of rape, where the victim is under the age of 14. [Cits.]" The evidence at trial established that the injuries Sara sustained as a result of the rape were the same injuries as those specifically alleged in the indictment as the basis for the aggravated child molestation charge. Therefore, while it was proper to prosecute appellant for both rape and aggravated child molestation, he should have been convicted and sentenced only for the rape. OCGA §§ 16-1-6; 16-1-7; accord *Dobbins v. State*, 262 Ga. 161 (4) (415 SE2d 168) (1992); *Andrews v. State*, 200 Ga. App. 47 (1) (406 SE2d 801) (1991). Compare *Bryant v. State*, 204 Ga. App. 856

(2) (420 SE2d 801) (1992). Accordingly, appellant's separate conviction and sentence for aggravated child molestation must be vacated.

3. We find no error in the trial court's denial of appellant's challenge to the traverse jury array and his objection to the traverse jury.

> A defendant has no right to a jury selected from a list which perfectly mirrors the percentage structure of the community. What is required is a list which represents a *fair* cross section of the community and which is not the product of intentional racial or sexual discrimination. [Cit.]

*Cook v. State*, 255 Ga. 565, 573 (340 SE2d 843) (1986). The record supports the traverse jury certificate issued by the trial court, which shows that the composition of the traverse jury list represents a fair cross section of Muscogee County. Appellant's argument regarding the underrepresentation of young persons on the traverse jury list is controlled adversely to him by *Potts v. State*, 259 Ga. 812 (1) (388 SE2d 678) (1990). We have reviewed appellant's other arguments raised in this enumeration and find them to be without merit.

4. The State used nine of its ten peremptory strikes against black potential jurors. The record reveals that in response to appellant's assertion of a constitutional challenge (see *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986)) when the State exercised its first peremptory strike against a black potential juror, the prosecutor gave the court his reason for the exercise of that strike and the trial court then ruled on whether the reason given was sufficiently neutral and legitimate. This procedure was followed for each subsequent strike used during the selection of the jury (regardless of the race of the potential juror), without any preliminary finding by the trial court that a prima facie case of discrimination had been established. We have carefully reviewed the record, which reveals that the State consistently struck those jurors who indicated that they would have difficulty imposing a death sentence in any case, see *Tharpe v. State*, 262 Ga. 110 (6) (416 SE2d 78) (1992); *Foster v. State*, 258 Ga. 736 (3) (374 SE2d 188) (1988), and do not find clearly erroneous the trial court's determination that the State's challenges were legitimate. *Tharpe*, supra.

5. The trial court did not err by refusing to charge that the presumption of innocence is "in the nature of evidence." *Mathis v. State*, 255 Ga. 542 (1) (340 SE2d 602) (1986).

6. The trial court gave the same pattern charge discussed in *Vance v. State*, 262 Ga. 236 (2) (416 SE2d 516) (1992) (decided May 22, 1993, 27 months after trial in the case at bar).

> Although the better charge would not include [the phrase

"reasonable and moral certainty,"] we held in *Vance v. State*, [supra,] that a similar instruction "created no reversible error when 'considered in the context of the charge as a whole.' [Cit.]"

*Hicks v. State*, 262 Ga. 756 (425 SE2d 877) (1993).

7. As to the trial court's charge concerning guilt beyond a reasonable doubt in which it referenced the "duty to convict," we suggested in *Sutton v. State*, 262 Ga. 181 (415 SE2d 627) (1992) (decided April 23, 1993, 26 months after trial in the case at bar) that it would be better practice to use the charge in the current edition of the Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2d ed. 1991), but found no error in the charge as given. "That holding applies here as well." *Taylor v. State*, 262 Ga. 584, 586 (2) (422 SE2d 430) (1992).

8. The trial court's charge on premeditation was approved by this Court in *Wright v. State*, 255 Ga. 109 (6) (335 SE2d 857) (1985). We do not agree with appellant that any reversible error was committed by the trial court's use of the pattern charges on malice and premeditation. Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2d ed. 1991), pp. 68-69. See *Kellum v. State*, 258 Ga. 536 (3) (371 SE2d 405) (1988).

9. No mandatory inference, unconstitutional under *Sandstrom v. Montana*, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979), was present in the language in either the charge on intent or the charge on malice.

10. We find no error in the trial court's failure, in the absence of a written request, to give a charge specifically on identification. See *Johnson v. State*, 237 Ga. 495 (2) (228 SE2d 879) (1976).

11. The failure to give a charge on prior inconsistent statements as substantive evidence is not error as "[a]bsent instructions to the contrary, the jury surely regarded substantively *all* the evidence presented to it. [Cit.]" *Ford v. State*, 255 Ga. 81, 87 (8) (f) (335 SE2d 567) (1985).

12. We find no error in the admission of photographs of pre-autopsy views of Sara Caldwell, see *Thomas v. State*, 259 Ga. 202 (4) (378 SE2d 686) (1989); different perspectives of the crime scene, see *Black v. State*, 261 Ga. 791 (15) (410 SE2d 740) (1991); and views of the injuries sustained by the aggravated assault victim, Ben Caldwell. See *Jefferson v. State*, 206 Ga. App. 544 (5) (425 SE2d 915) (1992). No error is presented by the admission of a videotaped view of the crime scene and the victim's body. See *Foster v. State*, supra at (7).

13. We find no error in the trial court's admission into evidence of four adult movies found in the apartment. The tapes were not shown to the jury, although a witness who viewed the tape found under the living room couch testified it depicted women dressed as

young girls having sex with various men. This evidence was admissible to show appellant's bent of mind toward the sexual activity with which he was charged and his lustful disposition. *Helton v. State*, 206 Ga. App. 215 (424 SE2d 806) (1992). That this evidence may have incidentally put appellant's character into evidence does not render inadmissible what is otherwise relevant and material to the issues in this criminal case. *Earnest v. State*, 262 Ga. 494 (1) (422 SE2d 188) (1992).

14. No reversible error was committed by the admission of testimony by Ms. Caldwell about her sex life with appellant. See generally *Smith v. State*, 255 Ga. 685 (2) (341 SE2d 451) (1986).

15. No error is presented by the admission of evidence regarding appellant's three-day disappearance and the prosecutor's argument of flight. *Renner v. State*, 260 Ga. 515 (3) (397 SE2d 683) (1990).

16. We find no error in the trial court's denial of appellant's motion to compel Ben to submit to examination by a defense-employed psychiatrist. It is well-established that a witness cannot be compelled to submit to an interview with a defense representative. See, e.g., *Baxter v. State*, 254 Ga. 538 (4) (331 SE2d 561) (1985); *Rutledge v. State*, 245 Ga. 768 (2) (267 SE2d 199) (1980). We find that rule applicable to attempts to compel witnesses to submit to examinations by defense experts.

17. We find no abuse of the trial court's discretion in admitting expert testimony that the boot print found on the back door had a tread similar to that on boots appellant was wearing the day of the crimes. This evidence was relevant in regard to statements made by appellant to police, in which he speculated that the crimes were committed by an unknown perpetrator who kicked in the back door of the apartment. See generally *Spencer v. State*, 260 Ga. 640 (8) (398 SE2d 179) (1990).

18. Appellant did not object to Dr. Lochridge's testimony about post-traumatic stress syndrome, did not request additional curative instructions or move for a mistrial in regard to an improper question posed on cross-examination to a defense witness, and made no objection to the State's argument regarding the failure of the defense to produce evidence rebutting the State's DNA evidence. Accordingly, these matters do not present grounds for reversal. See generally *Shearer v. State*, 259 Ga. 51 (6) (376 SE2d 194) (1989); *Lyon v. State*, 262 Ga. 247 (3) (416 SE2d 523) (1992); *Wright v. State*, 255 Ga. 109 (4) (335 SE2d 857) (1985).

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED NOVEMBER 22, 1993.

*Ray B. Gary, Jr.,* for appellant.

*Thomas J. Charron, District Attorney, Jack E. Mallard, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, C. A. Benjamin Woolf, Assistant Attorney General,* for appellee.