## S99A1771. MONROE v. THE STATE.

(528 SE2d 504)

BENHAM, Chief Justice.

A jury found appellant Joseph Freddie Monroe guilty of malice murder, felony murder, two counts of aggravated assault, and possession of a knife during the commission of a crime in connection with the death of Shirley McKnight.[1]

1. The State presented sufficient evidence from which a rational trier of fact could find appellant guilty beyond a reasonable doubt of malice murder and possession of a knife during the commission of a felony. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). There was evidence that the victim was stabbed nine times outside her Rockdale County home and had collapsed in the roadway where she was found by relatives at approximately 9:30 p.m. One of her brothers had seen her at 7:00 p.m., and a sister had spoken to her by telephone around 7:30 p.m. A clerk of a nearby convenience store identified appellant in a photographic lineup as the agitated man who had a knife between 7:30 and 8:00 p.m. A car similar to that owned by appellant was seen parked near the victim's home shortly after she was last seen alive.

After suffering physical abuse at appellant's hands, the victim had recently ended a 20-year relationship with him and had initiated legal proceedings to evict appellant from the victim's home. A pocketknife with blood on the blade was found in appellant's possession at the time of his arrest. The DNA profile of blood found on the exterior telephone box on the victim's home matched appellant's blood, and the DNA profile of bloodstains found on a jacket worn by appellant when he was arrested matched that of the victim and that of appellant. Appellant had told his brother and the victim that he was going to kill the victim.

2. Appellant contends that the trial court committed reversible error when it refused defense counsel's request for more than one hour for closing argument. At the time of appellant's trial, Uniform Superior Court Rule 13.1 limited closing argument in a "capital fel-

---

[1] The victim was killed on November 24, 1994, and appellant was indicted for the crimes two weeks later. The convictions obtained as a result of appellant's first trial were vacated upon the trial court's grant of appellant's motion for new trial on October 6, 1997. Appellant's retrial commenced July 15, 1998, and concluded on July 24 with the jury's return of guilty verdicts. The felony murder verdict was vacated by operation of law (OCGA § 16-1-7), and the two aggravated assaults merged as a matter of fact into the malice murder conviction. *Malcolm v. State*, 263 Ga. 369 (5) (434 SE2d 479) (1993). The trial court sentenced appellant to life imprisonment for the malice murder conviction and to a consecutive five-year term of imprisonment for the weapons conviction. Appellant's motion for new trial, filed August 14, 1998 and amended May 11, 1999, was denied June 25. A notice of appeal was filed July 16, and the appellate record was docketed in this Court on August 27 and submitted for decision on briefs.

ony case in which the death penalty is sought" to two hours and to one hour in "any other felony case,"[2] and OCGA § 17-8-73 provided that counsel in a non-capital felony case was limited to one hour for closing argument, and to two hours in a capital felony case. In *Hayes v. State*, 268 Ga. 809 (7) (493 SE2d 169) (1997), decided seven months before appellant's trial, this Court construed "capital felony" as used in § 17-8-73 to include those cases in which the defendant was being tried for murder without the death penalty being sought, and concluded that the trial court in *Hayes* erred as a matter of law when it restricted the defendants' closing arguments to less than the two hours to which they were statutorily entitled. See also *Massey v. State*, 270 Ga. 76 (3) (508 SE2d 149) (1998). Thus, the trial court in the case at bar also erred as a matter of law when it did not treat appellant's malice murder trial as one involving a capital felony under OCGA § 17-8-73 and did not give appellant the two-hour limit on closing argument to which he was statutorily entitled.[3]

In *Hayes*, supra, 268 Ga. at 813, we recognized that abridgment of the right to make a closing argument to a jury is presumed harmful, and that the presumption of harm is overcome when the denial of the right is not complete and the evidence of the defendant's guilt is so overwhelming that it renders any other version of events virtually without belief. In the case at bar, appellant's right to make a closing argument was not completely abridged since his attorney was given an hour to persuade the jury of the existence of reasonable doubt. Compare *McDuffie v. Jones*, 248 Ga. 544 (2) (283 SE2d 601) (1981), where the trial court ruled that only counsel for McDuffie's co-defendant could make a closing argument in the trial where two persons were tried together. In the case at bar, the evidence of appellant's guilt was overwhelming: after suffering physical abuse at the hands of appellant, the victim had recently ended a 20-year relationship with appellant and had initiated proceedings to evict him from her home; an hour or two before the victim's brutally-stabbed body was discovered, appellant was in a nearby store acting strangely and in possession of a large knife; a car similar to that owned by appellant was seen parked near the victim's home shortly after she was

---

[2] Effective September 2, 1999, USCR 13.1 was amended to provide for two-hour closing arguments in "[f]elony cases punishable by the death penalty or life in prison. . . ."

[3] An examination of the trial transcripts in *Hayes* and *Massey* reveals that in neither case did defense counsel rely on OCGA § 17-8-73 when making the request for more than one hour for closing argument. In fact, defense counsel in *Hayes* made the same request of the trial court as defense counsel made in the case at bar — to exercise its discretion to expand the time for closing argument. In *Massey*, we did not endorse the State's assertion in its appellate brief that the defendant's failure to assert before the trial court his *statutory* right to a two-hour closing argument constituted a waiver of his right to raise the issue on appeal.

last seen alive; the DNA profile of blood found on the exterior telephone box on the victim's home matched appellant's blood; the DNA profile of bloodstains found on a jacket worn by appellant when he was arrested matched that of the victim and that of appellant; and appellant had told his brother and the victim that he was going to kill the victim. As the evidence of appellant's guilt "is so overwhelming that it renders any other version of the events virtually without belief[,]" this case is one of those "extreme cases" in which the presumption of harm has been overcome. Id. As a result, though the trial court erred when it did not permit defense counsel to give a closing argument of more than one hour, that error does not require reversal of appellant's conviction.

3. Appellant next takes issue with the content of a jury instruction given before the presentation of evidence. At that time, the trial court informed the jury of the presumption of innocence, defined "reasonable doubt," and then told them that "if that doubt does not exist in your minds as to the guilt of the defendant, then the jury has a responsibility to convict." Since *Sutton v. State*, 262 Ga. 181 (1) (415 SE2d 627) (1992), we have discouraged the use of a jury instruction which suggests that the jury has a "duty to convict" in the absence of reasonable doubt and, while not finding it reversible error to use such an instruction, have informed trial courts that the "better practice" is to use the pattern jury instruction which informs the jury that it would be "authorized to convict" in the absence of reasonable doubt. *Berry v. State*, 267 Ga. 476 (4) (d) (480 SE2d 32) (1997); *LeMay v. State*, 264 Ga. 263 (4) (443 SE2d 274) (1994); *Caldwell v. State*, 263 Ga. 560 (7) (436 SE2d 488) (1993); *Marion v. State*, 263 Ga. 358 (3) (434 SE2d 463) (1993); *Taylor v. State*, 262 Ga. 584 (2) (b) (422 SE2d 430) (1992). We reiterate our admonition with regard to the charge which informs the jury of its "responsibility to convict" and note that the jury was correctly informed in the instructions given after the close of the evidence they would be authorized to convict appellant if no reasonable doubt as to his guilt existed. See *Marion v. State*, supra, 263 Ga. 358 (3).

4. Appellant asserts that the prosecutor was erroneously permitted to read aloud statements purportedly made by appellant's half-brother to a police investigator after the victim was killed. The assistant district attorney read the statements aloud during her examination of the half-brother in an effort to lay the foundation for her use of the documents to impeach the witnesses with a prior statement inconsistent with the witness's trial testimony. See *Duckworth v. State*, 268 Ga. 566 (492 SE2d 201) (1997). Pretermitting our determining whether the contents of the witness's prior statements were inconsistent with his in-court testimony is our conclusion that any error was rendered harmless by the testimony of the sheriff's investi-

gator who took the statements. See *Woods v. State,* 269 Ga. 60 (3) (495 SE2d 282) (1998).

5. Appellant next contends the trial court committed error when it declined to conduct a pre-trial hearing concerning the issue of admissibility of the State's DNA evidence. After the State's DNA experts testified, the trial court told the attorneys that it had made the determination required by *Caldwell v. State,* 260 Ga. 278 (1) (b) (393 SE2d 436) (1990), upon which the admissibility of such evidence is dependent.[4] While the trial court's determination should precede the admission of the DNA evidence, the fact it followed the admission of the evidence in this case does not make it reversible error. See, e.g., *Johnson v. State,* 264 Ga. 456 (5) (448 SE2d 177) (1994), where this Court remanded the case to the trial court for a post-trial determination regarding the admissibility of the DNA evidence. Admissibility of DNA evidence is not dependent upon the trial court finding that the testing produced sufficiently reliable *results,* only that the scientific principle and techniques are valid and capable of producing reliable results and that the DNA tester performed the procedures in an acceptable manner. Id.

6. Lastly, appellant contends the trial court erred in refusing to suppress evidence obtained from appellant following his arrest because the warrantless arrest was made without probable cause.[5] Upon the tender of the evidence at issue at trial, appellant's counsel affirmatively stated he had "no objection." In so doing, counsel waived any objection, including those raised in his motion to suppress. *Dyer v. State,* 233 Ga. App. 770, 771 (505 SE2d 71) (1998). Furthermore, appellant consented to a search of his car and agreed to give blood samples.

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., and Sears, J., who concur specially.*

FLETCHER, Presiding Justice, concurring specially.

Because Monroe never invoked the statute that we have interpreted as providing for two hours of closing arguments in capital felony cases, I find it unnecessary to conduct a harmless error analysis on the issue. Citing the then-existing uniform rule, Monroe requested more time for closing argument at his 1998 trial. Defense counsel argued that the trial court had the discretion under Uniform

---

[4] The trial court found "that the general scientific principles and techniques involved in DNA testing are valid and capable of producing reliable results, and [the DNA tester], according to her testimony, has performed the scientific procedures in an acceptable manner." See *Johnson v. State,* 264 Ga. 456 (5) (448 SE2d 177) (1994).

[5] In denying the motion to suppress, the trial court ruled that probable cause for arrest existed because a month earlier appellant allegedly had beaten the victim severely and appellant had not been seen since the death of the victim.

Superior Court Rule 13.2 to extend the time for closing argument beyond one hour, but the trial court declined to grant an extension under the rule. The defendant never argued that he was entitled to more than one hour as a matter of right, invoked OCGA § 17-8-73, or cited our decision in *Hayes v. State*[6] during the brief colloquy with the court. Because the defendant never objected to the one-hour limitation based on the statute or our decision interpreting it or informed the court of any basis for extending the time other than the exercise of its discretion, I would hold that he waived his right to a two-hour closing argument under OCGA § 17-8-73.

I am authorized to state that Justice Sears joins in this special concurrence.

DECIDED MARCH 13, 2000.

*Gentry & Waldrop, Michael S. Waldrop,* for appellant.

*Richard R. Read, District Attorney, Nancy N. Bills, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.

---

[6] 268 Ga. 809 (493 SE2d 169) (1997).