In the Supreme Court of Georgia

Decided:  February 22, 2016

S15A1691.  LOWE v. THE STATE.

HUNSTEIN, Justice.

Appellant Herbert Lowe was convicted of felony murder and related offenses in connection with a shooting at the home of victim Lisa Davis in January 2013.  Lowe now appeals, contending that the evidence was insufficient to support his convictions, the trial court erred in rejecting his immunity motion, and his trial counsel rendered constitutionally ineffective assistance.  Finding no error, we affirm.[1]

_____

[1]Lowe was indicted by a Clayton County grand jury in May 2013 for the malice murder, felony murder, and aggravated assault of Davis; the aggravated assault and false imprisonment of Velinsa Johnson; concealing the death of Davis; and two counts of firearm possession during the commission of a crime.  Lowe was tried by a jury in June 2014 on all the charges except that for concealing a death, which the State agreed to nolle prosse.  The jury returned guilty verdicts on all remaining counts except that for malice murder, as to which the trial court declared a mistrial.  The trial court subsequently sentenced Lowe to life imprisonment for the felony murder of Davis, twenty consecutive years for the aggravated assault of Johnson, ten consecutive years for the false imprisonment of Johnson, and two consecutive five-year terms for the firearm possession counts, for a total sentence of life imprisonment plus forty years.  The remaining aggravated assault count was merged into the felony murder count for sentencing purposes.  In September 2014, Lowe filed a timely motion for new trial, which was amended in January 2015 and again in February

Viewed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. On the morning of January 29, 2013, Davis was shot and killed in her Forest Park home. Velinsa Johnson, who had been residing at Davis' home, was in her upstairs bedroom at the time of the shooting. At approximately 8:00 a.m., Johnson heard the garage door chime, indicating someone had entered the home, followed closely by two "pops." Johnson exited her room and, when she reached the top of the stairs, she could see Lowe in the kitchen standing over Davis with a gun. Lowe and Davis had been romantically involved and living together for several years, but their relationship had waned, and Davis had recently asked Lowe to move out of the house.

After viewing the scene downstairs, Johnson testified, she fled back to her bedroom. Lowe followed her, pointing the gun at her and remarking, "I could kill you." Johnson testified further that Lowe forced her to the bathroom floor at gunpoint and refused Johnson's pleas to call 911. Several hours elapsed,

2015. Following a hearing, the motion was denied on March 13, 2015. Lowe filed a timely notice of appeal on March 18, 2015. This appeal was docketed to the September 2015 term of this Court and thereafter was submitted for decision on the briefs.

during which Johnson could hear Lowe walking up and down the stairs and the sound of the garage door chime. At some point at least an hour into the ordeal, Johnson testified, Lowe told Johnson that Davis had pulled a gun on him. After approximately four hours, Lowe left, and Johnson called 911. Shortly thereafter, Lowe turned himself in to authorities, surrendering a Kel-Tec nine millimeter handgun.

The crime scene investigation uncovered a nine millimeter projectile inside one of the lower kitchen cabinets and two nine millimeter shell casings, one on the stove top and one in the sink. In the investigator's opinion, the location and angle of the bullet hole in the cabinet were consistent with a shot fired at a person crouching down in the corner.

A GBI firearms examiner determined that the shell casings and projectile, in addition to a bullet and jacket fragment recovered from Davis' body, had all been fired from the nine millimeter handgun that Lowe had turned over to police. The medical examiner observed on Davis' body two gunshot wounds, one to her upper back and the other to her chest. The medical examiner opined that the shooter had been at least 18 to 24 inches away from Davis when the shots were fired, and that the "wound track" of the shot to Davis' back was

consistent with the conclusion that she had been in a crouched position when she was shot.

A close friend of Davis testified that Davis had asked Lowe to move out several weeks prior to the shooting and that, since that time, Davis had expressed concerns that Lowe was following her and rummaging through her papers and belongings. The friend also testified that Davis had given her instructions regarding her will in the event of her death.

The defense contended that Lowe had shot Davis only after she pulled a gun on him. Lowe testified at trial that it was he, not Davis, who had initiated the idea of his moving out, and that, on the morning of the shooting, he was packing up some of his belongings, intending to "just get some space." Lowe testified that, as he was preparing to leave, he reentered the house through the kitchen to find Davis pointing a gun at him. Lowe testified that he did not recall drawing or firing his gun. He further denied having pointed the gun at Johnson or having forced her to the bathroom floor. Lowe admitted that he had made no attempt to revive Davis and refused to call 911 after the shooting. On cross-examination, when asked whether his defense was self-defense or accident, he responded, "both."

4

1. The evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Lowe was guilty of all the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Undermining Lowe's self-contradictory claims of self-defense and accident, the evidence supported a finding that one of the two gunshots entered Davis from the back while she was in a crouched position. Though Lowe maintained that Davis pointed a gun at him, the jury was authorized to disbelieve this testimony, particularly given his failure to render aid and refusal to summon emergency assistance after the shooting. See Hampton v. State, 272 Ga. 284 (1) (527 SE2d 872) (2000) (assessing witness credibility and resolving evidentiary inconsistencies are within the province of the fact-finder).[2]

2. Lowe contends that the trial court erred in denying his pre-trial motion for immunity based on self-defense. See OCGA § 16-3-24.2 (granting immunity to those who use deadly force in self-defense). To have been entitled

---

[2]Also contrary to Lowe's contentions, a verdict of voluntary manslaughter was not authorized, as Lowe himself admitted that he was not angry or upset in the moments leading up to the shooting. See OCGA § 16-5-2 (defining "voluntary manslaughter" as a homicide committed "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation").

to immunity from prosecution, Lowe was required to establish by a preponderance of the evidence that he shot Davis in self-defense. See Bunn v. State, 284 Ga. 410 (3) (667 SE2d 605) (2008). At Lowe's pre-trial immunity hearing, the trial court weighed Lowe's account of the shooting against the testimony of the medical examiner, who noted that Davis had been shot in the back from a distance of at least 18 inches away; Johnson's testimony regarding Lowe's conduct and demeanor after the shooting; and Lowe's own admission that he neither rendered aid to nor summoned medical assistance for Davis. Based on this testimony, the court was authorized to deny Lowe's motion for immunity.

3. Lowe also contends that his trial counsel rendered ineffective assistance. To establish ineffective assistance of counsel, a defendant must show both that his counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not

6

required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012).

Here, Lowe claims his counsel was ineffective for (1) failing to file a plea of misnomer or a general demurrer, or to seek dismissal of the indictment, due to the indictment's misspelling of Lowe's middle name; and (2) failing to call a particular witness at trial to testify regarding Lowe's demeanor on the day before the shooting. Insofar as Lowe does not challenge his identity as the accused in this case,[3] Lowe cannot demonstrate any prejudice from the typographical error in the indictment or counsel's failure to take corrective action in that regard. Likewise, given Lowe's failure to proffer the expected testimony of the witness he faults counsel for omitting, he cannot establish any prejudice from counsel's failure to call that witness.

Judgment affirmed. All the Justices concur.

---

[3]See OCGA § 17-7-112 (plea of misnomer should state that defendant "was not known and called by the name" in the indictment).