304 Ga. 795
FINAL COPY

S18A1557.  BENNETT v. THE STATE.

NAHMIAS, Presiding Justice.

Appellant Archie Edward Bennett was convicted of felony murder, arson, and concealing a death in connection with the shooting death of his ex-wife, Shirley Bennett.  Appellant contends first that the trial court erred when it granted the State's motion to exclude evidence of drugs found in Shirley's system during her autopsy, and second that his right to be present at trial was violated because the trial transcript does not show that he was present on at least three occasions.  We conclude that both contentions are meritless, so we affirm.[1]

---

[1]  The crimes occurred on September 5, 2008.  On December 1, 2008, a Pierce County grand jury indicted Appellant for malice murder, felony murder, first-degree arson, and concealing the death of another person.  At a trial from December 8 to 10, 2009, the jury acquitted Appellant of malice murder but found him guilty of the other charges.  The trial court sentenced him to serve life in prison for felony murder, 20 consecutive years for arson, and 10 more years for concealment.  Appellant filed a motion for new trial on December 29, 2009.  After the appointment of appellate counsel, a very brief hearing was held on November 26, 2012.  The trial court announced that the motion would be denied, and the district attorney said that he would prepare the written order for the court to sign, but apparently he failed to do so for more than five years.  Finally, on June 11, 2018, the court entered a one-sentence order denying the motion, which was prepared by Appellant's counsel.  Appellant then filed a timely notice of appeal, and the case was docketed in this Court for the August 2018 term and submitted for decision on the briefs.  We note that this is yet another case

1.    Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. In 2002, Appellant and Shirley went through a contentious divorce, after which the property they owned in Blackshear, Georgia was split into two parcels: Appellant lived in a mobile home on one end of the property, and Shirley lived in a house on the other end. Appellant was required to pay Shirley about $1,300 in alimony each month, based on a percentage of his pension, but he fell behind on his payments. By the summer of 2008, Appellant may have owed Shirley as much as $40,000. She and her lawyers pressured Appellant to pay the money due, although he had little income. There was also evidence that Shirley often antagonized Appellant.

At about 1:00 a.m. on Friday, September 5, 2008, Donnie Joyce, Appellant's nephew and neighbor, saw smoke coming from Appellant's mobile home. Joyce went over to the home and noticed that Shirley's truck was parked in front. He began yelling and beating on the doors and walls of the home in an attempt to alert anyone inside. Joyce managed to get one of the doors open, but the smoke prevented him from seeing anything inside. Joyce then called 911

with an inordinate delay between trial and appeal. See Owens v. State, 303 Ga. 254, 258-260 (811 SE2d 420) (2018).

2

and moved Shirley's truck out of the way to make room for the fire trucks; the keys, along with her purse and cigarettes, had been left on the driver's seat. When the firefighters arrived, Joyce told them that he thought Shirley might be inside the home because her purse was still in her truck. After attacking the flames from the outside, two firefighters were sent into the home to search for people, but they did not find anyone. The firefighters could not get into the back bedroom, however, because the floor had burned away.

When Shirley's family members learned about the fire and were unable to contact her, they urged the fire department to check the mobile home again. The fire chief then returned to the home for a more thorough search and uncovered a burnt body lying in the doorway to the back bedroom where the fire appeared to have originated. Investigators from the GBI and the State Fire Marshal's Office were then called to assist with the investigation. They found blood on the carpet underneath the body and the metal remains of a shotgun on the bed. Dental records confirmed that it was Shirley's body. An autopsy revealed that she had been shot in the lower chest with a shotgun. Because there was no evidence of smoke in her throat or lungs, the medical examiner determined that Shirley died from the shooting before the fire started. The fire

3

investigator determined that diesel fuel had been spread throughout the mobile home and that the fire started when someone ignited the fuel near the area where Shirley's body was found.

Around 11:30 a.m. on the day of the fire, Appellant spoke with GBI agents at the scene. He claimed that he had been at a hotel in Brunswick at the time of the fire. He also said that he suspected the burnt body was Shirley's. He told the agents that she had called him earlier in the week to tell him that the lights were on in his mobile home and that it looked like someone had broken in, so he gave her permission to go in and switch off the lights if it happened again while he was away. Appellant told a similar story to his insurance agent when he called to submit a claim for fire damage that morning. But when an insurance adjuster arrived later that afternoon to assess the damage, Appellant told him that he did not know whose burnt body it was.

Five days after the fire, Appellant was interviewed again by GBI agents. This interview was video-recorded, and the State played the recording for the jury at trial. After initially denying again any involvement in the fire or Shirley's death, Appellant told investigators the following story: He had been at the end of his rope financially and decided to commit suicide on Monday,

4

September 1. To protect his family from shame or pain, his plan was to disguise the suicide by staging a break-in of his mobile home, dousing it with diesel fuel, and igniting it at one end before shooting himself with a shotgun at the other end. After purchasing the ammunition, spreading the fuel, and staging the break-in, however, he "chickened out." On Thursday night, he once again attempted to complete the suicide. After he got the shotgun ready, he called Shirley to tell her that she had pushed him to the edge and he was about to kill himself. Shirley came over to the mobile home, and the two had a long argument. Appellant sat on the bed with the shotgun, and Shirley stood in the doorway. After arguing for "two hours or longer," Shirley lunged at him. As he raised the gun in self-defense, Shirley hit it, which caused the gun to fire, killing her instantly.

Two days later, an insurance investigator went to the jail to interview Appellant regarding his claim. At the end of the interview, Appellant signed a written statement admitting that he intentionally burned his home and withdrawing the claim.

At trial, Appellant's counsel relied primarily on the recorded interview to argue self-defense and accidental discharge of the shotgun. He argued that

5

Appellant panicked after Shirley was shot, setting fire to the previously spread fuel in an attempt to cover up her unintended death; he conceded that Appellant was guilty of arson and concealing a death. There was no evidence that Shirley was armed during the encounter, so in support of his self-defense claim, Appellant called his stepdaughter to testify that Shirley had threatened to kill Appellant around the time of the divorce in 2002. Appellant did not testify.

Appellant does not dispute the legal sufficiency of the evidence supporting his convictions. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to reject Appellant's contrived and changing stories and to find him guilty beyond a reasonable doubt of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Lowe v. State, 298 Ga. 810, 812 (783 SE2d 111) (2016) (explaining that a jury is free to disbelieve the defendant's evidence of self-defense and accident); Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation

omitted)).

2.      Appellant contends that the trial court improperly excluded evidence that two drugs were found in Shirley's system during her autopsy — phentermine, a diet supplement, and hydrocodone, a pain reliever.  On the first day of trial, the State moved to exclude any evidence of the drugs.  Appellant opposed the motion, arguing that the drugs made Shirley more aggressive, which would support his claim that she lunged at him, causing him to raise the shotgun to protect himself.  The State countered that the drug evidence was irrelevant, and thus inadmissible, unless Appellant called an expert to testify about how the drugs would have affected Shirley's behavior at the time of her death.  The trial court granted the State's motion but explained that if Appellant had a witness who could testify as to the effects of the drugs, the court would reconsider its ruling.  Appellant did not elicit any such testimony during trial.[2]

We review the trial court's evidentiary ruling for abuse of discretion, see Smith v. State, 292 Ga. 620, 624 (740 SE2d 158) (2013), and here the court's ruling was correct.  In decisions under the old Evidence Code —  which

---

[2] Appellant complains that the State provided the autopsy report to his counsel only ten days before trial, but that was in compliance with the criminal discovery statute.  See OCGA § 17-16-4 (a) (4).

7

governed the trial of this case in 2009 — this Court consistently held that evidence that a murder victim ingested drugs or alcohol was inadmissible without corresponding competent evidence explaining how the substance affected the victim's behavior at the pertinent time. See, e.g., Dunn v. State, 292 Ga. 359, 361-362 (736 SE2d 392) (2013) ("In the absence of evidence of the effect the victim's alcohol consumption had on her behavior on the day she was stabbed, the trial court properly excluded evidence of the victim's alcohol use."); Hawes v. State, 261 Ga. 164, 165 (402 SE2d 714) (1991) ("Since appellant has not demonstrated how the victim's use of cocaine contributed in any way to behavior by the victim that might have constituted provocation and therefore would have been relevant to his defense of voluntary manslaughter, we find the trial court did not err by excluding the evidence in question." (citation omitted)). Because Appellant did not produce any evidence indicating how the two drugs in Shirley's system may have affected her behavior during her fatal encounter with Appellant, the drug evidence was inadmissible and thus was properly excluded.

3. Because the trial transcript does not specify that Appellant was in the courtroom after returning from recesses on three occasions, he contends that

his constitutional right to be present at trial was violated. The transcript shows that Appellant was in court for each day of his trial; that after each of the three recesses in question, the trial court asked if the parties were ready before the jury was brought into the courtroom, and Appellant's counsel answered yes; and that the first witness after the first of the three recesses to which Appellant points identified him in the courtroom. Moreover, we presume that the trial was conducted according to law unless there is affirmative evidence to the contrary. See Johnson v. State, 302 Ga. 188, 198 (805 SE2d 890) (2017). Appellant has offered no evidence to rebut this presumption and to show that he was not in court for all critical stages of his trial. Appellant therefore has not demonstrated a violation of his right to be present. See White v. State, 302 Ga. 806, 808-809 (809 SE2d 749) (2018).

Judgment affirmed. All the Justices concur, except Boggs, J., disqualified.

Decided December 10, 2018.

Murder. Pierce Superior Court. Before Judge Kight.

Martin H. Eaves, for appellant.

George E. Barnhill, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General, for appellee.