305 Ga. 246
FINAL COPY

S18A1428.  GOODSON v. THE STATE.

BENHAM, Justice.

In April 2015, appellant Douglas Goodson was convicted of felony murder and possession of a firearm during the commission of a felony related to the shooting death of his relative Rodney Worley.[1]  Goodson appeals, asserting that the evidence was insufficient to convict and that he received ineffective assistance of counsel.  For the reasons that follow, we affirm.

Viewed in a light most favorable to the verdicts, the evidence shows as follows.  On October 14, 2012, Goodson invited several family members over

---

[1] The crimes occurred on October 14, 2012.  On January 8, 2013, a White County grand jury indicted Goodson on charges of malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony.  After a trial that took place March 23-April 3, 2015, the jury acquitted appellant of malice murder, but returned verdicts of guilty on all remaining charges.  On April 24, 2015, the trial court sentenced appellant to life in prison for felony murder and to five consecutive years in prison for possession of a firearm during the commission of a felony.  The charge of aggravated assault merged for sentencing purposes.  On April 24, 2015, appellant moved for a new trial and supplemented the motion on January 16, 2018.  The trial court held a hearing on the motion on December 15, 2017, while granting additional time to file briefs, and denied the motion on March 22, 2018.  Appellant filed a notice of appeal on April 19, 2018.  Upon receipt of the record, the appeal was docketed to the August 2018 term of this Court and submitted for a decision to be made on the briefs.

to his house in White County to shoot targets in his back yard.  Approximately 30 minutes after they started shooting, Worley — the victim, Goodson's cousin, and next-door neighbor — called the police to complain about the noise.  An officer came by both houses, but determined that Goodson and his guests were not breaking any laws and decided to leave.

Once the officer left, Goodson and his guests began shooting targets again, and this angered Worley.  Worley started yelling at Goodson's guests from his property, and Goodson came around to the front of the house to see what was happening.  Both Worley and Goodson traded insults from their respective properties while holding long guns, but each refused to go to the other's property.  Then, both Worley and Goodson put their long guns down and Worley stepped into the street.  Goodson asked Worley if he had a gun and if he intended to shoot Goodson.  Worley replied in the negative and took his hands out of his pockets to show he was unarmed.

Goodson then went to the street to confront Worley, and witnesses testified they believed the two were going to fight.  However, Goodson pulled a Glock .45-caliber handgun from his back pocket and shot the entire magazine at the victim from a distance of eight to ten feet.  Goodson told investigators that he knew he hit Worley because he saw blood, but decided to reload and

fire another entire magazine at Worley while he was on the ground. Goodson also told investigators that he would have emptied a third magazine into the victim if he had one. In a written statement, Goodson admitted that, to his knowledge, Worley did not have a gun. The police found a can of mace and a pocket knife on Worley's body, but did not find a firearm on or near him.

Two witnesses testified that they did not see anything in Worley's hands when he went down to the street and they did not see Worley reach into his pocket before Goodson shot him. Mrs. Worley testified that after her husband was first shot, he grabbed his arm and turned away as if he was going to come back to their house. However, Goodson continued shooting as Worley began stumbling away from Goodson and fell. Mrs. Worley stated Goodson then stood over her husband, who was not saying or doing anything, and continued to shoot him.

A White County coroner identified Worley's cause of death as multiple gunshot wounds. A GBI medical examiner testified that Worley was shot ten separate times, including three shots in the back and four shots to the back of the head. The shots to the victim's back preceded the shots to the victim's head. The close proximity of the shots to the back of the head indicated they took place one after another in rapid succession. The medical examiner also

noted that the victim suffered injuries consistent with falling forward onto a gravel road. A GBI special agent testified that the entry wounds to the victim's back and the shell casing pattern were consistent with Worley moving away from Goodson while being repeatedly shot in the back. The agent also found a bullet lodged in the dirt next to where Worley's head was during the shooting, indicating that Goodson was standing over Worley while continuing to shoot him on the ground.

1. (a) Goodson argues that the evidence was insufficient to convict him of aggravated assault, felony murder, and possession of a firearm during the commission of a felony, and even if it were sufficient, Goodson was justified in shooting Worley. We disagree. Goodson notes that he and other witnesses believed Worley was reaching into his pocket for a weapon immediately before Goodson shot him. Goodson also claims that Worley was known to carry a pistol and it was reasonable for Goodson to believe Worley was going to kill him.

However, when reviewing the sufficiency of the evidence, this Court does not reweigh the evidence or resolve conflicts in testimony. *Caldwell v. State*, 263 Ga. 560, 562 (1) (436 SE2d 488) (1993). The defendant is no longer presumed innocent, and all of the evidence is to be viewed in a light most

favorable to the jury verdict. *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014). There was evidence presented that Worley was first shot in the arm and attempted to retreat as Goodson continued to fire. This was sufficient for a jury to find Goodson guilty of aggravated assault. See OCGA § 16-5-21 (a) (2). The aggravated assault conviction then supports the conviction for felony murder because there was clear evidence Worley died as a result of the shooting, as well as possession of a firearm during the commission of a felony. See *Jackson v. Virginia*, 443 U. S. 307, 324 (III) (C) (99 SCt 2781, 61 LE2d 560) (1979); *Waddell v. State*, 261 Ga. 529, 530 (1) (407 SE2d 742) (1991).

(b) Goodson's justification argument must also fail. Although several witnesses testified that Worley was known to carry a pistol in his pocket, other witnesses testified they never saw Worley with a pistol. The jury also heard testimony that Worley did not reach into his pocket and never threatened to kill Goodson.

Questions about the existence of justification are for the jury to resolve, and the jury may reject any evidence in support of a justification defense and accept evidence that a shooting was not done in self-defense. See *Anthony v. State*, 298 Ga. 827, 829 (1) (785 SE2d 277) (2016). Moreover, even if the jury accepted Goodson's version of events, it was still authorized to conclude

Goodson did not act in self-defense because he continued shooting the victim after he no longer posed any threat to Goodson. See *Jimmerson v. State*, 289 Ga. 364, 367 (1) (711 SE2d 660) (2011). Thus, the jury was authorized to conclude that Goodson was not justified in shooting Worley. See id.

2. Goodson also argues that his trial counsel was constitutionally ineffective because counsel never presented expert testimony regarding Goodson's state of mind, counsel withdrew a request for a voluntary manslaughter instruction at Goodson's request, and counsel failed to assert a claim for pretrial immunity pursuant to OCGA § 16-3-24.2. We disagree and, for the reasons below, find that trial counsel provided effective assistance.

To succeed on an ineffective assistance of counsel claim, a defendant must satisfy both prongs of the *Strickland v. Washington* test. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). First, the defendant must show counsel's performance was deficient by showing counsel made errors so serious that it was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. See id. "The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct." *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003). Second, the

defendant must show the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious that they were likely to affect the outcome of the trial. See id.

Since a defendant must satisfy both prongs, this Court does not need to "approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U. S. at 697 (IV). The trial court's factual findings and credibility determinations are reviewed under a clearly erroneous standard, but this Court will independently apply the legal principles to the facts. *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

(a) First, Goodson alleges trial counsel was ineffective because he failed to present expert testimony regarding Goodson's state of mind under OCGA § 16-3-21 (d) (2).[2] However, trial counsel testified at the motion for new trial

---

[2] OCGA § 16-3-21 (d) provides:

In a prosecution for murder or manslaughter, if a defendant raises as a defense a justification provided by subsection (a) of this Code section, the defendant, in order to establish the defendant's reasonable belief that the use of force or deadly force was immediately necessary, may be permitted to offer:

(1) Relevant evidence that the defendant had been the victim of acts of family violence or child abuse committed by the deceased, as such acts are described in Code Sections 19-13-1 and 19-15-1, respectively; and

(2) Relevant expert testimony regarding the condition of the mind of the defendant at the time of the offense, including those relevant facts and

hearing that he sought out an expert; but, after reading the expert's report, interviewing the expert before trial, and then consulting with Goodson, decided not to use the expert because he believed it would not be good for the defense.[3] This was a strategic decision within the broad range of professional conduct afforded to attorneys. See *Davis v. State*, 290 Ga. 584, 586 (2) (a) (723 SE2d 431) (2012). Therefore, Goodson cannot show trial counsel performed deficiently. Moreover, Goodson cannot show prejudice because he failed to proffer the testimony of any expert witness that he alleges counsel should have called at trial. See *White v. State*, 293 Ga. 635, 636-637 (2) (748 SE2d 888) (2013). Therefore, trial counsel was not ineffective for choosing not to present expert testimony about Goodson's state of mind.

(b) Next, Goodson claims that trial counsel was ineffective for failing to request a jury instruction on the lesser included offense of voluntary

---

circumstances relating to the family violence or child abuse that are the bases of the expert's opinion.

[3] Trial counsel testified at the motion for new trial hearing that "the report was not very good, particularly good for us," because "there was a lack of a scientific basis, and there were a number of issues that we thought could cause us problems in trial rather than being beneficial at trial." Counsel said his conversations with the expert indicated that the expert's trial testimony would have been substantially different from what was in the expert's initial report. Trial counsel said he was concerned whether the testimony would be admitted due to the contradiction of the findings in the written report.

manslaughter. Trial counsel originally included voluntary manslaughter in his written requests to charge, but withdrew that charge during the charge conference. The State expressed it wanted the charge included, but trial counsel objected. Trial counsel explained at the motion for new trial hearing that he discussed the issue with Goodson prior to objecting at the charge conference, and that counsel withdrew the request for a jury instruction at Goodson's request. On appeal, Goodson asserts that trial counsel's failure to consult with him about the defense after the close of evidence and failure to insist on the inclusion of a voluntary manslaughter instruction was objectively unreasonable.

Deciding which jury instructions to request is a matter of trial strategy. See *Smith v. State*, 301 Ga. 348, 353 (III) (b) (801 SE2d 18) (2017). Pursuing an "all or nothing" defense is a permissible strategy that counsel took after consulting with Goodson. See *Blackwell v. State*, 302 Ga. 820, 824 (3) (809 SE2d 727) (2018). We cannot say trial counsel's decision to pursue an "all or nothing" defense, after consulting with Goodson about the decision, fell below a reasonable standard of attorney conduct. See id. at 826 (3).

(c) Lastly, Goodson alleges that trial counsel was ineffective because he failed to seek pretrial immunity from prosecution pursuant to OCGA

§ 16-3-24.2. However, trial counsel testified at the motion for new trial hearing that he did not see any legal basis for filing a motion for immunity. In order to succeed on a pretrial immunity motion pursuant to OCGA § 16-3-24.2, trial counsel would have had to show by a preponderance of the evidence that Goodson acted in self-defense. See *Lowe v. State*, 298 Ga. 810, 812 (2) (783 SE2d 111) (2016). Given the evidence of the excessiveness of the shooting and evidence that Worley was fleeing and shot in the back, the trial court would have been authorized to deny the motion. Therefore, Goodson has not shown a reasonable probability that the immunity motion would have been granted, and consequently cannot show trial counsel's failure to pursue a motion for immunity prejudiced him. See *Holt v. Ebinger*, 303 Ga. 804, 808 (814 SE2d 298) (2018) (citing *Smith v. State*, 309 Ga. App. 241, 247-248 (3) (c) (709 SE2d 823) (2011)); *Moran v. State*, 334 Ga. App. 765, 770 (2) (780 SE2d 529) (2015).

In sum, Goodson has failed to show the evidence was insufficient to convict and that he received ineffective assistance of counsel. Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed. All the Justices concur.

Decided February 18, 2019.

Murder. White Superior Court. Before Judge Miller.

Rose & Associates, Jenny C. Rose, for appellant.

W. Jeffrey Langley, District Attorney, Samantha L. Barrett, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.