300 Ga. 764
FINAL COPY

S17A0417. NGUMEZI v. THE STATE.


MELTON, Presiding Justice.

Following a jury trial, Ezwekwesiri Ngumezi appeals his convictions for murder, armed robbery, and related charges, contending that the evidence was insufficient to support the jury's finding of guilt for armed robbery and that the trial court erred by denying a request to charge on voluntary manslaughter.[1] We

[1] On September 16, 2009, Ngumezi was indicted for malice murder, felony murder predicated on aggravated assault, armed robbery, aggravated assault, and possession of a firearm during the commission of a felony. Following a jury trial ending on January 28, 2011, Ngumezi was found guilty on all counts. The trial court sentenced Ngumezi to life imprisonment for murder, twenty concurrent years for armed robbery, and five consecutive years for possession of a firearm during the commission of a felony. The conviction for felony murder was vacated by operation of law, Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the count of aggravated assault was merged for purposes of sentencing. On February 8, 2011, Ngumezi filed a motion for new trial, which he amended on March 7, 2014. The trial court denied the motion on June 3, 2014, and Ngumezi filed a notice of appeal on June 27, 2014. After unresolved issues at the trial court, including a motion in arrest of judgment, were considered, Ngumezi filed an amended notice of appeal on January 6, 2016. Thereafter, his case was assigned to the term of this Court beginning in December 2016 and submitted for decision on the briefs.

affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, on the evening of June 6, 2009, Ngumezi asked his neighbor, Cornelius Hubert, to drive Ngumezi to meet a supplier to purchase two pounds of marijuana. The drug deal was facilitated by Danny Marshall as a middle man, and Andre Reynolds was the supplier. Marshall and Reynolds had a history of facilitating marijuana transactions together in amounts ranging up to several pounds. Ngumezi agreed to pay Reynolds $2,400 for the two pounds of marijuana, and the parties to the deal met in an apartment parking lot. Ngumezi, Hubert, and Marshall drove to the location together, and Reynolds arrived separately. After some negotiation occurred, Reynolds had to leave to get the marijuana, and Ngumezi told Reynolds that he had to leave to get an extra $200 (though Ngumezi testified that he actually had enough money). When everyone returned, Ngumezi, who was carrying a backpack, got out of Hubert's car and into the passenger seat of Reynolds's truck. Hubert and Marshall remained in Hubert's car. Marshall observed a "commotion" inside Reynolds's truck. Marshall then approached the truck and saw that Ngumezi had a black handgun pointed at Reynolds. Reynolds, who did not generally carry a gun, was fighting with

Ngumezi, trying to keep the gun away. Ngumezi then shot Reynolds twice, killing him. Ngumezi next pointed the gun at Marshall, who ran away to avoid being shot. Hubert testified that, after that, Ngumezi ran from Reynolds's truck with the gun in his hand and got into Hubert's car with a large plastic bag of marijuana. Ngumezi stated, "I was trying to rob him, so I shot him. . . . I robbed him. I shot him because I robbed him. . . . He wouldn't give me the marijuana so I shot him." As Hubert drove away from the scene, Ngumezi fired a final shot at Marshall. Later that night, Ngumezi gave Hubert a handful of the marijuana to calm his nerves.

This evidence was sufficient to enable the jurors to find Ngumezi guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Nonetheless, Ngumezi contends that the evidence was insufficient to show that he committed armed robbery by stealing two pounds of marijuana from Reynolds. Ngumezi argues that the only evidence supporting this charge was the testimony of Hubert, that Hubert, despite the fact that he was never indicted, was an

accomplice, and that there was no evidence corroborating Hubert's testimony.[2]

Even if we assume without deciding that Hubert could be considered to be Ngumezi's accomplice in the murder and armed robbery, there was sufficient evidence to corroborate his testimony. Under former OCGA § 24-4-8, "[in] felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness."[3] Furthermore,

> sufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged. It must, however, be independent of the accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that he is guilty. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict.

(Citations and punctuation omitted.) Threatt v. State, 293 Ga. 549, 551 (1) (748

---

[2] Ngumezi makes no argument on appeal regarding the trial court's charge to the jury about the nature of accomplice testimony, so we do not consider that issue.

[3] Georgia's new Evidence Code, effective for trials conducted on or after January 1, 2013, also provides that to sustain a felony conviction, the testimony of an accomplice must be corroborated. See OCGA § 24-14-8.

SE2d 400) (2013). Here, Hubert's testimony was corroborated by a number of things. Video surveillance images from a security camera in the parking lot where the drug deal occurred showed Ngumezi, Reynolds, and Marshall, and this footage directly corroborates Hubert's testimony that he drove Ngumezi and Marshall to the scene to buy two pounds of marijuana, a fact that Ngumezi has admitted. Marshall confirmed that he was brokering a deal through Reynolds for two pounds of marijuana in exchange for $2,400. Shell casings found inside the cabin of Reynolds's truck and at the scene, Ngumezi's own testimony that he shot the victim, and Marshall's eyewitness account of a commotion during the course of the drug transaction corroborate Hubert's testimony about the murder. Marshall, who interacted with Reynolds on a daily basis and who had participated in dozens of drug transactions with him, testified that he believed that Reynolds had the two pounds of marijuana in his truck at the time of the shooting. Marshall reached this conclusion based on his prior association with Reynolds. Ngumezi, in turn, testified that he trusted Marshall to fairly conduct and coordinate drug deals based on past experiences. In addition, Ngumezi admitted that the backpack he carried back and forth to Reynolds's truck at the time of the shooting was large enough to hold a two-pound bag of marijuana.

5

Furthermore, the discovery of a packet containing an ounce of marijuana on Reynolds's body after his death corroborates the nature of the drug deal and that marijuana was involved. Finally, neither the two pounds of marijuana corroborated by Marshall's testimony nor the $2,400 confirmed by Ngumezi, was found in the car with Reynolds after Ngumezi shot and killed him and then returned to Hubert's car. As such, the evidence of the armed robbery was sufficient, even if Hubert was considered to be an accomplice.

2. Ngumezi contends that the trial court erred by denying his request for a charge on the lesser included offense of voluntary manslaughter in addition to an instruction on self-defense. We disagree.

During his examination at trial, Ngumezi testified that, after he got into Reynolds's truck, Reynolds reached under the seat for a pistol. Ngumezi then testified that he wrestled the gun away from Reynolds and shot Reynolds twice. Ngumezi testified unequivocally that he did so out of fear for his life and for his protection. Contrary to Ngumezi's arguments, this testimony did not require the trial court to instruct the jury on the lesser included offense of voluntary manslaughter as well as self-defense.

While it is true that jury charges on self-defense and voluntary

6

manslaughter are not mutually exclusive,

> the provocation necessary to support a charge of voluntary manslaughter is different from that which will support a claim of self-defense. The distinguishing characteristic between the two claims is whether the accused was so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself. Only where this is shown will a charge on voluntary manslaughter be warranted.

(Citation and punctuation omitted.) Dugger v. State, 297 Ga. 120, 124 (7) (772 SE2d 695) (2015).  Though Ngumezi's testimony might support some level of provocation, it does not provide even slight evidence that Ngumezi shot Reynolds due to a sudden, irresistible passion. To the contrary, Ngumezi testified that he shot Reynolds solely for his own protection. Accordingly, the trial court did not err by denying Ngumezi's request for an instruction regarding voluntary manslaughter as a lesser included offense. Harris v. State, 299 Ga. 642 (2) (791 SE2d 32) (2016).

Judgment affirmed. All the Justices concur.

Decided March 20, 2017.

Murder. Fulton Superior Court. Before Judge Shoob.

Leon Hicks, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Marc A.

Mallon, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.