310 Ga. 515
FINAL COPY

S20A1183.    GARDNER v. THE STATE.

ELLINGTON, Justice.

A Ware County jury found Reggie Gardner guilty of felony

murder in connection with the shooting death of Franklin Wright.[1]

---

[1] On July 28, 1995, a Ware County grand jury indicted Gardner for malice murder (Count 1); felony murder predicated on aggravated assault by shooting the victim with a handgun (Count 2); aggravated assault with intent to murder (Count 3); possession of a firearm during the commission of a crime (Count 4); discharge of a firearm on a public roadway (Count 5); and carrying a pistol without a license (Count 6). Following a trial commencing on December 12, 1996, a jury found Gardner not guilty on Counts 1 and 3, but guilty on all remaining counts. On December 19, 1996, the trial court sentenced Gardner to life in prison on Count 2; to five years in prison on Count 4 (consecutive to Count 2); and to twelve months in prison on Counts 5 and 6 (concurrent with Count 2). On December 31, 1996, trial counsel filed a motion for a new trial and a motion to withdraw. On March 18, 1997, the trial court clerk mailed Gardner a copy of counsel's motion to withdraw and the court order granting it, along with an application for the appointment of new counsel. Gardner returned the completed application on December 11, 2001. On February 8, 2002, the trial court appointed Gardner new counsel to pursue post-conviction remedies. On March 31, 2005, counsel wrote a letter to the trial court, noted that the reason for the delay in scheduling a hearing on Gardner's motion for a new trial was "primarily [counsel's] fault," and requested a hearing. Counsel then filed an amended motion for a new trial more than 13 years later, on December 17, 2018. Then, a third attorney — Gardner's current appellate counsel — filed an entry of appearance on November 7, 2019. On that same day, he filed an amended motion for a new trial. The trial court held a hearing on the motion and denied it in an order filed January 15, 2020. Gardner filed a timely notice of appeal. The appeal was docketed to the August 2020 term and submitted for a decision on the briefs.

Gardner appeals from the denial of his motion for a new trial, contending that his trial counsel was ineffective because he failed to request a jury instruction on voluntary manslaughter. As explained more fully below, the trial court did not err in finding that counsel's performance was not constitutionally deficient because counsel chose to present an "all-or-nothing" defense, which was reasonable given that the evidence did not show the irresistible passion resulting from serious provocation required to support a charge on voluntary manslaughter. Therefore, we affirm.

1. Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial shows the following. Around 2:00 a.m. on June 11, 1995, Gardner was driving in Waycross with his girlfriend, Robyn Grayer. As he approached a stop sign, Gardner almost collided with a bicycle ridden by Wright. Gardner stopped his car, but remained seated inside. Wright followed Gardner's car, flung his bicycle to the ground, and then walked toward Gardner, shouting obscenities. Announcing that he was unarmed, Wright challenged Gardner to a fistfight. He lifted his shirt to show that he had no

2

concealed weapon. According to Grayer, two or three other people also began moving toward the car. Instead of driving away, Gardner fired a handgun at Wright. As Wright turned to flee, Gardner fired again, hitting Wright, who collapsed on the ground. Gardner drove away. One witness called 911, and another hailed the responding officer, who found Wright gasping for air and unable to speak. While driving to Grayer's house, Gardner threw his handgun from the car. After officers arrested Gardner later that morning, Grayer showed the officers where Gardner had disposed of his gun.

Wright died at the hospital. The medical examiner testified that a single bullet entered Wright's right side, traveled upward, pierced his heart, and lodged in the left side of his chest. A GBI firearms expert determined that the bullet that killed Wright was likely fired from Gardner's gun.

On the morning of his arrest, Gardner gave a video-recorded statement. During the 35-minute interview, Gardner first denied that he was involved in the shooting. But he later admitted that he shot Wright, whose hands were raised, only after Wright verbally

threatened him and after Wright and others advanced toward him. Gardner did not testify at trial.

Neither Gardner nor any of the eyewitnesses to the shooting gave a statement or testimony demonstrating that Gardner shot Wright as the result of a sudden, violent, and irresistible passion. Grayer testified that Wright was responsible for the near collision and that Gardner apologized to Wright, even though he was not at fault. She testified that Wright was the angry party, not Gardner. Wright threw down his bicycle and approached Gardner's car shouting obscenities and threatening to kill Gardner and his brothers. She said that Gardner fired at Wright only after Wright put them in fear of an assault. She testified that Gardner acted in self-defense, and fired at Wright because it "looked like [Wright] was about to pull something out of his pocket."

In addition to Grayer's testimony, the State offered the testimony of four other eyewitnesses. William Nelson, who was in a nearby car with his brother, Brett Nelson, testified that he saw Wright pedal rapidly toward Gardner's car, throw his bicycle down

4

violently, and walk toward Gardner's car shouting obscenities at Gardner, who did not respond. Then he heard gunshots. Brett testified that he saw Wright throw his bicycle down, shout at and challenge Gardner to a fight, and then Gardner fired two shots from his car while Wright's hands were raised. Zachris Carter, a friend of Wright's, testified that Wright did not chase after Gardner's car. Rather, Gardner simply shot Wright when Wright walked toward Gardner's car. He said that he did not know whether Gardner and Wright had argued. Regina James, who was acquainted with both Gardner and Wright, testified that she saw Wright walk toward Gardner's car. Wright lifted his shirt and said that he had no weapon. She heard Wright challenge Gardner to a fight. Seconds later, she heard gunshots.

Gardner does not contest the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's general practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized

5

above was sufficient to authorize a rational jury to find Gardner guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).[2]

2. Gardner contends that his trial counsel was constitutionally ineffective because he failed to request a jury charge on voluntary manslaughter as a lesser offense of murder.[3] He argues that the trial court erred in denying his motion for a new trial on this ineffective assistance ground because a reasonable attorney would have concluded from the evidence that a self-defense strategy was

---

[2] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, 309 Ga. 385, 391-392 (4) (846 SE2d 83) (2020). The Court began assigning cases to the December term on August 3, 2020.

[3] OCGA § 16-5-2 (a) provides:

A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

6

unreasonable and, instead, pursued a defense based on serious provocation and requested a charge on voluntary manslaughter.[4] For the following reasons, we find no merit to this claim of error.

> To establish that his trial counsel was constitutionally ineffective, [Gardner] must prove both deficient performance by counsel and resulting prejudice. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To show that his lawyer's performance was deficient, [Gardner] must demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-690. This is no easy showing, as the law recognizes a "strong presumption" that counsel performed reasonably, and [Gardner] bears the burden of overcoming this presumption. Id. at 689. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. See *Humphrey v. Nance*, 293 Ga. 189, 192 (744 SE2d 706) (2013). In particular, "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." *Reed v. State*, 294 Ga. 877, 882 (757 SE2d 84) (2014).

*Davis v. State*, 299 Ga. 180, 182-183 (2) (787 SE2d 221) (2016).

---

[4] To authorize a jury instruction, there need only be slight evidence at trial supporting the theory of the charge. *State v. Newman*, 305 Ga. 792 (827 SE2d 678) (2019).

At the hearing on Gardner's motion for a new trial, trial counsel testified that he was admitted to the Georgia Bar in 1979, had tried several murder cases, and was once certified to try death penalty cases. He testified that, in 1995, it was his practice to obtain discovery, analyze the State's evidence, and discuss the case with his client. He recalled assessing the State's case and testified that he did not see evidence that Gardner acted out of the type of passion sufficient to support a voluntary manslaughter defense. Rather, based on Gardner's statement and Grayer's testimony, counsel believed that Gardner's best defense was self-defense. Counsel further testified that he elected not to request a voluntary manslaughter instruction for two reasons: (1) he did not see evidence to support such a charge; but (2) even if he had, he chose to pursue an "all-or-nothing" approach to his client's defense. Counsel explained that, "if you give a jury an option [to find the defendant guilty of a lesser offense,] they'll take it usually," and he "didn't want that option in this case" because he "thought it was straight out self-defense. [Wright] threw his bicycle down and he was going [after

8

Gardner].” Gardner did not testify at the motion for a new trial hearing, and the record contains no evidence that he disagreed with trial counsel's defense strategy.

"Decisions about which defenses to present and which jury charges to request are classic matters of trial strategy, and pursuit of an all-or-nothing defense is generally a permissible strategy." (Citations omitted.) *Velasco v. State*, 306 Ga. 888, 893 (3) (b) (834 SE2d 21) (2019). See also *Blackwell v. State*, 302 Ga. 820, 824-825 (3) (809 SE2d 727) (2018) ("The decision not to request a jury charge on a lesser included offense in order to pursue an 'all-or-nothing' defense is a matter of trial strategy." (citation and punctuation omitted)). Here, trial counsel testified that he met and consulted with Gardner before trial, that he investigated the case, and that a key eyewitness testified Gardner acted in self-defense. Accordingly, counsel decided to pursue a justification defense. Trial counsel did not act unreasonably in deciding to pursue only the defense of self-defense because that defense was consistent with Grayer's testimony and other trial evidence, and there was a dearth of

evidence supporting a defense based on voluntary manslaughter.[5]

See *Blackwell*, 302 Ga. at 825-826 (3) (holding that trial counsel, who pursued an all-or-nothing justification defense, was not deficient for failing to request a voluntary manslaughter charge, because he did not believe the evidence supported that charge and because the defendant consistently maintained that he acted in self-defense). Gardner has not demonstrated that counsel's defense strategy was unreasonable given the evidence in this case.

Because Gardner has not shown that counsel's performance was constitutionally deficient, as required by *Strickland*, the trial

---

[5] We note that,

> [w]hile it is true that jury charges on self-defense and voluntary manslaughter are not mutually exclusive, the provocation necessary to support a charge of voluntary manslaughter is different from that which will support a claim of self-defense. The distinguishing characteristic between the two claims is whether the accused was so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself. Only where this is shown will a charge on voluntary manslaughter be warranted.

(Citation and punctuation omitted.) *Ngumezi v. State*, 300 Ga. 764, 767 (2) (798 SE2d 229) (2017). See also *Williams v. State*, 306 Ga. 717, 721 (2) (832 SE2d 805) (2019). Here, "[a]t best, [the] evidence show[ed] that [Gardner] was attempting to repel an attack, not that he was so angered that he reacted passionately." *Williams*, 306 Ga. at 721 (2).

court did not err in denying Gardner's motion for a new trial on this ineffective assistance of counsel ground.

*Judgment affirmed. Melton, C. J., Nahmias, P. J., and Boggs, Peterson, Bethel, and McMillian, JJ., concur. Warren, J., not participating.*

DECIDED DECEMBER 7, 2020.
Murder. Ware Superior Court. Before Judge Gillis.
*Timothy C. Head, Jr.*, for appellant.
*George E. Barnhill, District Attorney, Alexander J. Markowich, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael O. Oldham, Assistant Attorney General*, for appellee.