NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: February 20, 2024

S23A1165.  LOPEZ v. THE STATE.

WARREN, Justice.

Appellant Belinda Lopez ("Belinda") was convicted of malice murder and possession of a firearm during the commission of a felony in connection with the shooting death of her husband, Noel Lopez ("Noel").[1]  In this appeal, Belinda contends that the evidence

---

[1] Noel was killed on March 1, 2020.  In January 2022, a Catoosa County grand jury indicted Belinda for malice murder, felony murder based on aggravated assault, two counts of aggravated assault (one based on shooting Noel and the other based on striking him on the head with a firearm), and possession of a firearm during the commission of a felony.  At a trial from March 28 to 31, 2022, a jury found Belinda guilty of all counts.  The trial court sentenced her to serve life in prison for malice murder and five consecutive years for possession of a firearm during the commission of a felony.  The felony murder count was vacated by operation of law, and the aggravated assault counts merged with the malice murder conviction.  See *Dixon v. State*, 302 Ga. 691, 698 (808 SE2d 696) (2017).  Through new counsel, Belinda filed a timely motion for new trial in April 2022, which she amended once. After an evidentiary hearing, the trial court denied the motion on April 20, 2023. Belinda then filed a timely notice of appeal, and the case was docketed to the August 2023 term of this Court and submitted for a decision on the briefs.

presented at her trial was legally insufficient to support her convictions and that her trial counsel provided constitutionally ineffective assistance. For the reasons explained below, we affirm.

1. The evidence presented at Belinda's trial, viewed in the light most favorable to the jury's verdicts, showed the following. On the night of February 29, 2020, Belinda, Noel, and Belinda's friend Angelica Juarez went to a nightclub in Chattanooga, Tennessee, where they drank several beers and shots of liquor. They left the nightclub sometime after 2:00 a.m., and Noel drove them in his pickup truck on Interstate 75 South toward their homes in Dalton, Georgia. Belinda sat in the front passenger seat, and Juarez sat behind her in the rear passenger seat. At 2:55 a.m., Belinda called 911 and reported that Noel had been shot in the head.

Responding investigators found the pickup truck stopped in the middle southbound lane of Interstate 75. Noel was dead; there was a gunshot wound on the right, back side of his head; and his body was "slumped" over the center console. Belinda, who was crying in the passenger seat, had blood on her hands, pants, and

2

feet, but investigators did not see any injuries on her. Juarez was not in the truck. Investigators observed a hole in the driver-side window and blood on the steering wheel, front passenger seat, and back seat. Investigators located a handgun holster on the passenger-side floorboard, and after they moved Noel's body, they found a 9mm semiautomatic pistol in the center console. The slide of the pistol was not locked, and there was a spent shell casing inside the gun chamber that failed to eject from the gun.[2]

A detective interviewed Belinda around 5:00 a.m. and 12:00 p.m. that day; she was interviewed again on March 2 and May 29. The interviews were video-recorded, and at trial, the recordings were admitted into evidence and played for the jury. During the first interview, Belinda told the following story. Noel was "very jealous," "abusive," and "aggressive." As he drove Belinda and Juarez, who was "drunk," home from the nightclub, he and Belinda began to argue about her socializing with friends there. Noel

---

[2] A firearms expert later testified at trial that semiautomatic pistols usually "automatically extract and eject" shell casings.

grabbed the pistol from the center console and waved it in her face, saying "I'm going to kill you." While the truck was still in motion, Belinda pushed the pistol away, it discharged, and Noel slumped over the console. She then got out of the truck, grabbed her cell phone, and called 911. She discovered that Juarez had left the truck, and she did not know what happened to the pistol. When the detective and an investigator interviewed Belinda again around 12:00 p.m., she told a somewhat different story. As she and Noel were arguing, she hit him with her hands, and he was "coming at her." She then heard a gunshot and Noel slumped over, but she did not remember him grabbing the pistol or her touching the pistol.

The detective and the investigator interviewed Belinda a third time on the next day, March 2, and she changed her story again. She said that Noel hit her in the chest and forehead while he was driving, and she was hitting him and "trying to defend [her]self with [her] hands."[3] He stopped the truck as they continued to fight, and she

---

[3] Although Belinda said during the interview that her chest and forehead were hurt, when the investigator asked if she had any bruising, she said, "No."

then heard a "bang." She did not see Noel grab the pistol, but she was "sure" that she did not shoot Noel because she never saw or touched the pistol. She then suggested that Noel likely grabbed the pistol from the center console at some point, and that when "they were struggling or whatever, maybe the gun dropped and shot."

When the detective interviewed Belinda again on May 29, she reiterated that she did not touch the gun and that she "believe[d] that the gun fell out of [Noel's] hand and that's how he accidentally got shot." Belinda also told the detective that she often scratched Noel during their fights and that Noel would choke her and leave bruises on her. At the end of the interview, the detective arrested Belinda for the charged crimes. The detective and the investigator testified at trial that they did not observe any injuries on Belinda during any of her interviews.

Juarez testified as follows. During the ride home from the nightclub, she was "very drunk" and was sleeping in the backseat of the truck when she woke up to hear Noel and Belinda fighting. Noel repeatedly hit Belinda and called her a "whore," and Belinda told

him to "stop." Belinda hit Noel on the side of the head, Juarez heard a "deafening sound," and she saw blood come from Noel's head as he slumped over. Juarez asked, "[W]hat did you do, Belinda, what happened"? Juarez then got out of the truck and fled because she was an undocumented immigrant. When the prosecutor asked if Juarez was involved in the shooting, she denied any involvement.

The medical examiner who performed Noel's autopsy concluded that the gun was fired between six inches and three feet from Noel's head and that the manner of his death was homicide. The examiner testified that "given the range of fire as well as the location[,] it would be very difficult, perhaps impossible, for [Noel] to have had this gun in his hand when this gun went off." The examiner also identified "fresh" abrasions on Noel's face and body, which were consistent with scratches, as well as a laceration on his face that the examiner testified was likely caused by his being struck with a small, blunt object, such as a gun.

A firearms expert examined the pistol and testified that it functioned properly and that she was unable to cause an accidental

6

discharge by dropping or jarring it. The expert also testified that this type of pistol has three safety mechanisms: a trigger safety that prevents the pistol from discharging unless the trigger is pressed; a firing-pin safety that blocks the firing pin from moving unless the trigger is pulled; and a drop safety that prevents the pistol from discharging if dropped. The expert further testified that having a "weak hold" on the pistol or holding the top of the pistol when it is fired may cause a shell casing not to eject but would not cause the firearm to discharge.

A gunshot primer residue ("GSR") test showed that Belinda had more than five particles of GSR on her hands, which according to an expert witness in microanalysis, indicated that Belinda discharged a gun, was in close proximity to a gun when it was discharged, or came in contact with an item that contained GSR. Juarez had one particle of GSR on her hands.

Belinda did not testify at trial. Opening statements and closing arguments were not transcribed, but it appears from trial counsel's cross-examination of witnesses and his testimony at the

7

motion for new trial hearing that Belinda's primary defense was that she was defending herself from Noel's attack when the pistol accidentally discharged. The jury was instructed on self-defense and accident.

2. Belinda contends that the evidence presented at her trial was insufficient—as a matter of constitutional due process and under OCGA § 24-14-6—to support her convictions for malice murder and possession of a firearm during the commission of a felony. Specifically, Belinda asserts that the State failed to disprove beyond a reasonable doubt her theories of self-defense and accident and alternatively, that the evidence indicated that Juarez shot Noel. This claim fails.

In evaluating a challenge to the sufficiency of the evidence as a matter of constitutional due process, we view the evidence presented at trial in the light most favorable to the verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which she was convicted. See *Jones v. State*, 314 Ga. 400, 406 (877 SE2d 232)

8

(2022). See also *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). And under OCGA § 24-14-6, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."

The evidence, when properly viewed in the light most favorable to the jury's verdicts, showed that Belinda and Juarez were the only people in the truck with Noel when he was shot; Belinda admitted during her interviews with investigators that she and Noel typically fought, she often scratched him, and they fought in the truck just before the shooting; and Noel's autopsy showed "fresh" scratches on his face and body. Belinda also gave investigators shifting accounts of how the shooting occurred: she initially said that the pistol discharged after Noel waved it in her face and she pushed it away, and she later claimed that she never saw or touched the gun, which somehow fell out of Noel's hand during their struggle and accidentally discharged. The State presented evidence to rebut these accounts, including the medical examiner's testimony that it

would have been nearly "impossible" for Noel to have been holding the gun when it discharged; the firearms expert's testimony that she was unable to cause an accidental discharge by dropping or jarring the pistol; and evidence that the pistol had been placed in the center console after the shooting, which authorized an inference that Belinda concealed it there because she was guilty. As to Belinda's claims that Juarez was the shooter, the evidence presented at trial suggested otherwise: Juarez heard a gunshot after Belinda hit Noel on the head and then fled out of fear because she was an undocumented immigrant. Moreover, Juarez expressly denied shooting Noel, and she had only one particle of GSR on her hands, while Belinda's hands contained more than five particles of GSR.

This evidence authorized the jury to conclude that Belinda was guilty beyond a reasonable doubt of malice murder and the related firearm possession count. Thus, the evidence was sufficient as a matter of constitutional due process. See *Jackson*, 443 U.S. at 319. See also *Jones*, 314 Ga. at 406-407 (holding that the evidence— which showed that the gun used in a shooting was functional and

had several safety features and the appellant had been violent toward the victim in the past and had lied to investigators about how the shooting occurred—authorized the jury to disbelieve the appellant's defense that the shooting was an accident and concluding that the evidence was constitutionally sufficient to support his conviction for malice murder); *Bennett v. State*, 304 Ga. 795, 797 (822 SE2d 254) (2018) (explaining that "[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence" and that the evidence authorized the jury to reject the appellant's "contrived and changing stories" and his claim that he was defending himself from his ex-wife when his gun accidentally discharged, killing her) (citation and punctuation omitted).

And although the evidence was circumstantial, it authorized the jury to reject as unreasonable Belinda's hypotheses that she acted in self-defense, that the shooting was an accident, and that Juarez was the shooter. The evidence was therefore also sufficient as a matter of Georgia statutory law. See OCGA § 24-14-6. See also

11

*Smith v. State*, 315 Ga. 357, 358, 361 (882 SE2d 289) (2022) (explaining that "'where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, we will not disturb that finding unless it is insupportable as a matter of law'" and concluding that the evidence, which included expert testimony rebutting the appellant's claim that the gun used to shoot the victim accidentally discharged, was sufficient under OCGA § 24-14-6) (citation omitted); *Peacock v. State*, 314 Ga. 709, 714 (878 SE2d 247 (2022) (holding that the circumstantial evidence presented at the appellant's trial was sufficient under OCGA § 24-14-6, as it authorized the jury to reject his alternative hypothesis that someone else killed the victims, given his "shifting stories that conflicted with other evidence").

3. Belinda also argues that her trial counsel provided constitutionally ineffective assistance by failing to pursue requests for certain jury instructions and by failing to object to the prosecutor's closing argument. To prevail on these claims, Belinda

must establish that her trial counsel's performance was deficient and that she suffered prejudice as a result. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984); *Gardner v. State*, 310 Ga. 515, 518 (852 SE2d 574) (2020). To prove deficient performance, Belinda must show that her counsel performed at trial "'in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms.'" *Gardner*, 310 Ga. at 518 (citation omitted). Belinda bears the burden of overcoming the "'strong presumption' that counsel performed reasonably." Id. (citation omitted). To carry this burden, she must demonstrate that no reasonable lawyer would have done what her lawyer did or would have failed to do what her lawyer did not. See id. To prove prejudice, Belinda must show that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. See *Strickland*, 466 U.S. at 694. We need not address both prongs of the *Strickland* test if Belinda makes an insufficient showing on one. See id. at 697.

(a) Belinda claims first that her trial counsel was ineffective for

withdrawing a requested jury instruction on voluntary manslaughter, see OCGA § 16-5-2,[4] and by failing to request jury instructions on unlawful-act involuntary manslaughter (based on reckless conduct), see OCGA § 16-5-3 (a), and unlawful-manner involuntary manslaughter, see OCGA § 16-5-3 (b).[5] Because Belinda

---

[4] OCGA § 16-5-2 says:
(a) A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.
(b) A person who commits the offense of voluntary manslaughter, upon conviction thereof, shall be punished by imprisonment for not less than one nor more than 20 years.

[5] OCGA § 16-5-3 says:
(a) A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony. A person who commits the offense of involuntary manslaughter in the commission of an unlawful act, upon conviction thereof, shall be punished by imprisonment for not less than one year nor more than ten years.
(b) A person commits the offense of involuntary manslaughter in the commission of a lawful act in an unlawful manner when he causes the death of another human being without any intention to

has not shown that trial counsel performed deficiently in these respects, she cannot succeed on these claims.

At the motion for new trial hearing, trial counsel testified that he consulted with Belinda several times about the weaknesses in her case and the possibility of pursuing the lesser offenses of voluntary and involuntary manslaughter; he advised her of the potential sentences for those crimes, including that unlawful-manner involuntary manslaughter is punishable only as a misdemeanor, see OCGA § 16-5-3 (b); she did not want to pursue the lesser offenses; he "didn't disagree with her"; and his decision to pursue an all-or-nothing defense based on the theory that Belinda was defending herself from Noel when the gun "went off," was "fact dependent" and "dependent upon the client's wishes." Belinda testified at the hearing that counsel did not explain the weaknesses in her case; he only briefly discussed the possibility of pursuing the

do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm. A person who commits the offense of involuntary manslaughter in the commission of a lawful act in an unlawful manner, upon conviction thereof, shall be punished as for a misdemeanor.

offenses of voluntary and involuntary manslaughter; he informed her that there were lesser punishments for those crimes but did not tell her that unlawful-manner involuntary manslaughter was a misdemeanor; she did not want to pursue those lesser offenses at the time of trial because she believed she was "innocent"; and if she had known about the weaknesses in her case and the potential misdemeanor sentence, she would have wanted the jury to consider the lesser offenses.

Even assuming (without deciding) that the evidence presented at trial would have authorized instructions on voluntary and involuntary manslaughter, trial counsel's decision not to pursue those instructions was not so unreasonable that no competent attorney would have made it under the circumstances. As we have explained, "'[d]ecisions about which defenses to present and which jury charges to request are classic matters of trial strategy, and pursuit of an all-or-nothing defense is generally a permissible strategy.'" *Gardner*, 310 Ga. at 519 (citation omitted). Belinda maintained throughout her interviews with investigators that she

was defending herself from Noel's attack when the gun accidentally discharged, although she also provided shifting accounts of how the shooting occurred. Trial counsel's decision to pursue an all-or-nothing defense that was consistent with Belinda's interview statements was not patently unreasonable. See, e.g., *Velasco v. State*, 306 Ga. 888, 893 (834 SE2d 21) (2019) (holding that trial counsel did not perform deficiently by failing to request a voluntary manslaughter instruction, because the appellant maintained during consultations with counsel and at trial that he acted in self-defense, a theory that is generally inconsistent with a claim of voluntary manslaughter); *Smith v. State*, 301 Ga. 348, 353-354 (801 SE2d 18) (2017) (concluding that trial counsel did not perform deficiently by deciding not to request jury instructions on involuntary manslaughter and reckless conduct and by instead pursuing an all-or-nothing defense of accident, which was "based on his client's account of the events").

And although Belinda claims that counsel did not adequately advise her about the weaknesses in her case or the lesser offenses

17

and that he improperly "ceded" to her the decision about whether to request instructions on those offenses, the trial court was authorized to credit counsel's testimony that after thoroughly consulting with Belinda, they both agreed to pursue an all-or-nothing strategy. See *Anthony v. State*, 311 Ga. 293, 297 (857 SE2d 682) (2021) (explaining, in the context of an ineffective assistance claim, that the trial court was authorized to implicitly credit trial counsel's testimony at the motion for new trial hearing over the appellant's contradictory testimony). See also *Goodson v. State*, 305 Ga. 246, 250 (824 SE2d 371) (2019) (rejecting the appellant's claim that his trial counsel was ineffective for failing "to insist on the inclusion of a voluntary manslaughter instruction" after the appellant asked counsel to withdraw his request for the instruction, because counsel's decision to pursue an all-or-nothing strategy of self-defense, after consulting with the appellant, was not unreasonable).

In sum, Belinda has not shown that her trial counsel performed deficiently by failing to pursue requests for the jury instructions she now asserts should have been given, so she has not established that

counsel was constitutionally ineffective. See, e.g., *Velasco*, 306 Ga. at 893; *Smith*, 301 Ga. at 353-354.

(b) Belinda also asserts that trial counsel was ineffective for failing to object on the ground that the prosecutor violated the continuing witness rule by re-playing about 20 to 30 minutes of a recording of one of Belinda's interviews with investigators during closing argument.[6] But such an objection would have been meritless. As we have explained, the continuing witness rule "regulates which documents or recordings go into the jury room with the jury during deliberations and which ones do not. The rule has no application to the replaying of recorded statements . . . during closing arguments." *Clark v. State*, 296 Ga. 543, 549 (769 SE2d 376) (2015) (rejecting the appellant's argument that the trial court violated the continuing witness rule by allowing his video-recorded statement to the police, which had been admitted into evidence, to

---

[6] We note that the continuing witness rule was unaffected by the enactment of the current Evidence Code. See *Moore v. State*, 311 Ga. 506, 512 (858 SE2d 676) (2021).

be re-played during the State's closing argument, because the rule did not apply in those circumstances) (citation omitted). See also *Lyons v. State*, 309 Ga. 15, 19 (843 SE2d 825) (2020) (explaining that the continuing witness rule "applies to recordings that go back with the jury into the jury room" and holding that the rule did not prevent the re-playing of video- and audio-recorded police interviews in the courtroom at the jury's request during its deliberations).

Trial counsel did not perform deficiently by failing to make a meritless objection, so this claim of ineffective assistance fails, too. See *Lee v. State*, Case No. S23A1097, 2023 WL 8721108, at *6 (decided Dec. 19, 2023) (explaining that "'the failure to make a meritless objection is not deficient performance'") (citation omitted).[7]

*Judgment affirmed. All the Justices concur.*

---

[7] Belinda also argues that the cumulative prejudicial effect of her trial counsel's alleged deficiencies deprived her of a fair trial. See *Schofield v. Holsey*, 281 Ga. 809, 811 n.1 (642 SE2d 56) (2007). But she has not carried her burden of proving that counsel performed deficiently in the ways she alleged, so we need not assess cumulative prejudice. See *Scott v. State*, 309 Ga. 764, 771 (848 SE2d 448) (2020).