**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia


Decided: December 10, 2024


S24A1125. SCOTT v. THE STATE.


ELLINGTON, Justice.

Lewarner Jaron Scott appeals his convictions for murder and other crimes in connection with the shooting death of Kevin Compton.[1] Scott contends that the State's evidence was insufficient

---

[1] Compton was shot early on the morning of July 12, 2014, and he died the next day. Scott was indicted by a Cobb County grand jury in connection with Compton's death on September 25, 2014, on charges of malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), and possession of firearm during the commission of a felony (Count 4). The grand jury also indicted Scott in connection with the same incident for the aggravated assault of Brandon McMurtry (Count 5) and possession of a firearm during the commission of that crime (Count 6), as well as the aggravated assault of McKinley Bain (Count 7) and possession of a firearm during the commission of that crime (Count 8).  Following a trial in August 2015 , a jury found Scott guilty on all counts. The trial court sentenced Scott on September 3, 2015, to serve life in prison on Count 1, five years in prison on Count 4, twenty years in prison on Count 5, five years in prison on Count 6, twenty years in prison on Count 7, and five years in prison on Count 8. The sentences on Counts 4 and 5 run consecutively to the sentence on Count 1, and the sentence on Count 6 runs consecutively to the sentence on Count 5. The sentence on Count 7 also runs consecutively to the sentence on Count 1, and the sentence on Count 8 runs consecutively to the sentence on Count 7, but the sentence on Count 7 runs

to support his convictions beyond a reasonable doubt because it did not sufficiently identify him as the shooter. We conclude, however, that the evidence was sufficient to support Scott's convictions beyond a reasonable doubt.

Scott was at a Kennesaw nightclub with friends in the early morning hours of July 12, 2014, when a bottle was thrown, hitting and seriously injuring Scott's friend, Jawaree Hill. Compton was also at the nightclub that morning with two friends, Brandon McMurtry and McKinley Bain. As the bottle was thrown, an altercation broke out inside the nightclub, and Compton and his

concurrently to the sentence on Count 5, and the sentence on Count 8 runs concurrently to the sentence on Count 6. These sentences add up to a total of life plus 25 years to serve in prison. Count 2 was vacated by operation of law and Count 3 merged into Count 1 for sentencing.

Scott's trial counsel filed a timely motion for new trial on September 25, 2015. Scott subsequently filed a motion to represent himself on appeal, along with a pro se "Amended Motion for New Trial," on June 21, 2018. After filing a motion to withdraw at Scott's request on November 26, 2018, Scott's appointed post-conviction counsel filed an amended motion for new trial on December 17, 2018. . At a hearing in February 2019, Scott opted to proceed with his appointed counsel's representation, and post-conviction counsel then filed an amended motion for new trial on March 8, 2019, and another on March 11, 2019. Following a hearing, the trial court denied the motion for new trial, as amended, on August 3, 2023,  and Scott's counsel filed a timely notice of appeal.  The appeal was docketed to the August 2024 term of this Court and submitted for a decision on the briefs.

friends decided to leave. The three walked out of the club, got into McMurtry's car, and drove toward the parking lot exit. McMurtry was driving the car out of the parking lot onto the road when gunshots rang out and Compton received a fatal gunshot wound to the head. McMurtry told investigating officers at the time that as he drove toward the exit, he noticed in "a quick blur" a man wearing blue, and he testified at trial that he remembered the person was wearing blue and that he was about a yard or two from his car.

Two witnesses at trial testified that they saw a man with dreadlocks and a blue shirt walking in the parking lot carrying a gun shortly before the shooting. One of the witnesses saw the man go to a car to retrieve the weapon before the shooting, and after the shooting, the other witness saw the man, still holding the gun, walk back toward the nightclub. That witness then saw the man drive a silver car to the front of the nightclub and tell someone to get in before speeding away.

One of Scott's friends testified that after Hill was taken outside the nightclub to wait for an ambulance, Scott, who had driven to the

3

club in a "little gray [Dodge] Neon," was out front with his car, which he wanted Hill to get in. A security guard who was waiting with Hill testified that he saw a man with dreadlocks drive up in front of the nightclub in a gray Dodge Neon. When the driver told Hill to get in the car, the security guard told the driver that Hill needed to go to the hospital for medical treatment.

A police officer responding to the scene arrived to see a small gray car parked in front of the nightclub as a man covered in blood was brought outside. The officer then observed the car speed out of the parking lot. A still photograph taken from the officer's dashcam video showed two men standing by the gray car, and, at trial, one of Scott's friends identified one of the men in the photograph as himself and the other man, who had dreadlocks and a light-colored shirt, as Scott.

Casings retrieved from the crime scene were later matched to a spent shell casing found in Scott's house. The casing was found in an envelope in a box in which a handgun was sold. A receipt for the purchase of the handgun was found with the box and showed that

4

Scott purchased the weapon a few months prior to the crime. Evidence showed that the manufacturer of Scott's handgun customarily includes an envelope containing "an expended cartridge" in the box with a new firearm to certify that the gun "was fireable" when it was shipped. Although the weapon used in the shooting was never found, testing showed that casings found at the crime scene, the bullet retrieved during the autopsy of Compton's body, and the spent casing found at Scott's home were all from the same gun.

When this Court evaluates a challenge to the sufficiency of the evidence as a matter of constitutional due process, it "view[s] the evidence presented at trial in the light most favorable to the verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which she was convicted." *Lopez v. State*, 318 Ga. 664, 667 (2) (898 SE2d 441) (2024) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (99 SCt 2781, 61 LE2d 560) (1979)). "[I]t is the jury's role to resolve conflicts in the evidence and determine the credibility of witnesses."

5

*Overstreet v. State*, 312 Ga. 565, 572 (1) (a) (864 SE2d 14) (2021) (citation and punctuation omitted). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Harris v. State*, 304 Ga. 276, 278 (1) (818 SE2d 530) (2018) (citation and punctuation omitted).

And where, as here, a conviction is based on circumstantial evidence, OCGA § 24-14-6 requires that "the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." "Whether any alternative hypotheses are reasonable and whether the circumstantial evidence excludes any such hypotheses are questions for the jury," and this Court "will not disturb the jury's findings on those questions unless they are insupportable as a matter of law." *Rashad v. State*, 318 Ga. 199, 206 (2) (897 SE2d 760) (2024) (citation and punctuation omitted). "[N]ot every hypothesis is a reasonable one," however, "and the evidence need not exclude

6

every *conceivable* inference or hypothesis—only those that are reasonable." *Graves v. State*, 306 Ga. 485, 487 (1) (831 SE2d 747) (2019) (citation and punctuation omitted; emphasis in original).

The evidence presented at trial, though circumstantial, authorized the jury to reject the alternative hypotheses raised by Scott that some other, unidentified person in the parking lot shot at Compton, McMurtry, and Bain and that the manufacturer of Scott's gun mistakenly put the wrong spent casing – from a gun that happened to be used in Compton's murder – in his gun box or that someone else put that casing there. See OCGA § 24-14-6. Moreover, the evidence showed that after Scott's friend was injured, a man matching Scott's description retrieved a gun from his car and walked across the parking lot with it shortly before the shooting and walked back toward the club afterward, still holding the gun. McMurtry also caught a glimpse of someone wearing the same color as the man with the gun within a few yards of his car right before the shooting. The man with the gun then got into a car and drove to the front of the nightclub. That man was later identified as Scott, and the car was

the same color, make, and model as the one Scott drove to the nightclub that night. After police arrived on the scene, Scott sped out of the parking lot. Spent casings found at the scene of the shooting and a spent casing found at Scott's house were later determined to have come from the same gun. This and other evidence presented at trial was sufficient to support Scott's convictions beyond a reasonable doubt. See *Wilson v. State*, 319 Ga. 550, 553-554 (1) (905 SE2d 557) (2024) ( evidence sufficient to support defendant's murder conviction where defendant was in the vicinity of the shooting, he was seen driving car connected to shooting a few minutes before and a short distance away from the shooting, and shell casing found at the scene was ejected from the same firearm as a shell casing found in that car).

*Judgment affirmed. All the Justices concur.*