NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S26A0140
Alex Khalil Smith
v.
The State

On Appeal from the Superior Court of Newton County
No. 2020-SU-CR-000895-3

Decided: April 21, 2026

LAND, Justice.

Alex Khalil Smith appeals his 2022 convictions for malice murder and related charges stemming from the shooting death of Cassandra Arnold.[1] On appeal, Smith argues that the evidence was insufficient to support his convictions and that the trial court failed to exercise its discretion to grant a new trial pursuant to

---

[1] The crimes took place on July 8, 2020. On October 14, 2020, a Newton County grand jury indicted Smith for malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), and possession of a firearm during the commission of a felony (Count 4).

After a jury trial, Smith was found guilty of all charges. The trial court sentenced Smith to serve life in prison with the possibility of parole for Count 1 and five years for Count 4 (to be served consecutive to Count 1). Count 2 was vacated as a matter of law, and Count 3 was merged into Count 1 for sentencing purposes.

Smith filed a timely motion for new trial on September 19, 2022, and amended that motion on September 22, 2023. After a hearing, the trial court denied the amended motion for new trial, and Smith filed a timely notice of appeal on November 7, 2024. The appeal was docketed to the term of this Court beginning in December 2025 and submitted for a decision on the briefs.

OCGA §§ 5-5-20 and 5-5-21 (the "general grounds"). For the reasons that follow, we affirm in part and vacate in part the trial court's order denying Smith's motion for new trial, and we remand the case to the trial court with direction that it exercise its discretion under the general grounds and issue an order reflecting its ruling with respect to those grounds.

1. Viewed in the light most favorable to the verdict, the evidence presented at trial showed as follows. On July 7, 2020, Smith contacted Arnold to purchase methamphetamine. Arnold arranged to purchase the meth for Smith from Kenneth Cavender. Smith wanted to buy an ounce of meth, but Arnold only had enough money to purchase 20 grams from Cavender. Between 9:00 and 10:00 p.m. on July 7, Arnold arrived at Cavender's house to purchase the meth in a pickup truck with Smith. While Smith waited outside, Arnold purchased the meth from Cavender and added "flex" (a filler material which Cavender testified might have been rock salt) so that Smith would believe he was getting a full ounce. In other words, Arnold tricked Smith into believing he was getting more meth than he actually was. Cavender then went outside and Smith introduced himself and gave Cavender his number so that he could purchase meth from Cavender directly in the future.

The next day, Smith called Cavender and left him a voicemail saying that "somebody's going to fix this shit" and that the money he used to purchase the meth "wasn't [Smith's] money." Smith called Cavender "periodically" throughout the day "trying to get [Cavender] to meet up with him."

Around 2:00 or 3:00 p.m., Smith drove to Arnold's home on White Birch Drive. Arnold lived in a "shed" behind the main house, while Cory Usher, Jessica Smith, and Ondrea Carter lived in the main house. Usher went outside to meet Smith when he

2

arrived, and Smith asked Usher if he had "seen Cassie," meaning Arnold. Smith then asked Usher if he smoked and held up a meth pipe, and Usher "jumped in the truck" with Smith and started smoking. During that time, Usher tried "to text Cassie and call Cassie," but she did not respond.

Smith and Usher went to a gas station to get food and passed Arnold and her boyfriend as they were returning home. Arnold and her boyfriend returned home, and Smith and Usher returned shortly thereafter. Arnold spoke with Smith near Smith's truck, and although her boyfriend testified that he did not hear the substance of the conversation, he did not believe it was an argument. Arnold's boyfriend testified that, at that time, Smith believed that Cavender had shorted him in the meth deal. Arnold's boyfriend offered to "make it right" and Smith indicated he was "all good with that." Arnold, Smith, and Arnold's boyfriend then began "smoking dope."

Law enforcement then arrived on the scene, and Arnold and her boyfriend fled on foot, while Smith left in his truck. After Arnold returned home later that evening, Usher texted Smith to ask if he "[made] it out okay." Smith texted him back "asking if [Arnold] and [her boyfriend] were there." Usher told him that Arnold was there, but her boyfriend was not.

Around ten to fifteen minutes later, as Usher was falling asleep, he heard two gunshots. Usher testified that he did not "go out back" to see what happened but instead went to a house "at the end of the street" because he had an outstanding arrest warrant and knew police would respond to the gunshots. Usher told the people at that house that he thought "[Arnold] just got shot" because "those gunshots [came] from the back yard."

Jessica Smith heard the gunshots, went outside, and found Arnold "laying on the ground with … two gunshot wounds." She

told Carter to call 911, and Carter did so at 10:45 p.m. When law enforcement arrived, Arnold was breathing, but she died shortly thereafter. Law enforcement recovered two .40 caliber shell casings from the scene.

At 9:59 p.m., 46 minutes before Carter called 911 to report the shooting, Smith called Cavender about the meth deal. This call lasted approximately 28 minutes. Cavender testified that Smith said "somebody was going to pay for this because it wasn't [Smith's] money, it was the cartel's money." During this conversation, Cavender told Smith that Arnold was the one who had "shorted" Smith on the drugs. Cavender offered to give Smith the "5 grams left out of [his] stuff" to "fix it for [Arnold]" if Smith would "just be cool." Smith agreed and told Cavender to "meet [him] at the gas station." That meeting never happened, and Arnold was shot shortly after the phone call ended.

After speaking with several witnesses, law enforcement identified Smith as a suspect and obtained Smith's cell phone location data for the date of the shooting. The location data showed his cell phone arriving in the White Birch Drive area at 2:01 p.m. the day of the shooting, traveling to a convenience store at around 3:30 p.m., and returning to the White Birch Drive area at around 4:00 p.m. Smith's phone remained in the White Birch Drive area until 10:42 p.m.

Law enforcement also searched Smith's residence pursuant to a warrant and found sweatpants consistent with the sweatpants witnesses described Smith as wearing on the date of the shooting, several unspent 9mm rounds, and evidence of drug usage. After Smith was arrested, law enforcement seized the black cloth facemask he was wearing, which resembled the one witnesses said he was wearing on the day of the shooting. The sweatpants and mask were tested for gunshot residue. Testing on the

sweatpants revealed "two particles characteristic of gunshot primer residue," which an expert testified "supports the possibility that the clothing was in close proximity to a firearm upon discharge."[2] Testing on the mask revealed "one particle characteristic of gunshot primer residue."

2. Smith argues that the evidence was constitutionally insufficient to support his convictions. We disagree.

In support of his argument, Smith argues that the cell phone data that placed Smith at the location of the shooting shortly before 911 was called was "imprecise," that the evidence identifying him as the shooter was "equivocal and tainted," and that the physical evidence failed to corroborate the State's theory. When evaluating challenges to the sufficiency of the evidence as a matter of constitutional due process, "we view the evidence presented at trial in the light most favorable to the verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Jackson v. State*, 311 Ga. 626, 629 (2021). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." Id. at 630.

Here, viewing the evidence in the light most favorable to the verdict, a jury could have found Smith guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Davenport v. State*, 309 Ga. 385, 389 (2020) (observing that when reviewing for sufficiency of the evidence, "we must put aside any

---

[2] That expert also testified that "forensic significance of this small quantity [of gunshot residue] may be limited," but that was different from "saying it has no forensic value."

5

questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact"). Smith had a motive to shoot Arnold, as she had shorted him on a drug deal and he was angry about it. In a call that ended shortly before Arnold was shot, Smith learned that Arnold, not Cavender, shorted him on the deal. Smith's cell phone location data showed his phone leaving the White Birch Drive area just three minutes before Carter called 911 to report the shooting. See *Richardson v. State*, 920 SE2d 84, 88 (Ga. 2025) (finding evidence constitutionally sufficient when, among other evidence of appellant's guilt, cell phone location placed the appellant's phone "in the vicinity of the crime scene around the time it occurred"). And gunshot residue testing found residue on sweatpants and a face mask consistent with the sweatpants and mask witnesses described Smith as wearing on the day of the shooting.

To the extent that Smith claims his conviction was improperly based on circumstantial evidence, that argument fails.[3] "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. Further,

> Questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter

---

[3] The trial court properly instructed the jury on circumstantial evidence.

of law.

*Smith v. State*, 280 Ga. 161, 162 (2006) (cleaned up). "Not every hypothesis is a reasonable one, however, and the evidence need not exclude every conceivable inference or hypothesis—only those that are reasonable." *Scott v. State*, 320 Ga. 485, 487-88 (2024) (cleaned up).

A jury would be authorized, based on the evidence described above, to exclude every "reasonable hypothesis" save that of guilt. *Scott*, 320 Ga. at 487-88. Smith points to no other plausible suspect, and the evidence certainly supports a finding of his guilt. Although Smith claims that the State did not investigate other witnesses as possible suspects, he does not point to evidence suggesting those witnesses would have any motive to shoot Arnold. And, although Smith points to a potential misidentification of Smith in a photo lineup by one witness and a Facebook post identifying Smith as a suspect that witnesses may have seen prior to identifying him, there is ample evidence supporting a conclusion that Smith was the person who arranged a drug deal with Arnold; that Smith was shorted in that drug deal and was upset with Arnold as a result; that Smith spent a portion of the day at the location of the murder doing drugs; that Smith was at the location of the murder at the time of its occurrence; that Smith left the scene of the murder shortly after it occurred; and that Smith's clothing and face mask had gunshot residue on it. Under these facts, the jury could have concluded that it would be unreasonable to think that someone else shot Arnold with no apparent motive, without leaving any trace of their presence, at the same time that Smith — who *did* have a motive — was at the scene of the shooting and that this other shooter then left the scene at the same time as Smith without being seen. See, e.g., *Nunnally v. State*, 319 Ga. 701, 709 (2024) (jury was free to reject as unreasonable

7

appellant's theory that someone else shot the victim given lack of evidence supporting appellant's theory and strong circumstantial evidence of appellant's guilt, which included cell phone location data placing appellant at the location the victim's body was found around the time of the murder).[4]

3. Smith also argues, and the State agrees, that the trial court failed to exercise its discretion under the general grounds when ruling upon Smith's motion for new trial. Upon review of the trial court's order denying Smith's motion for new trial, we agree, and we vacate that order and remand the case to the trial court with direction that it exercise its discretion under the general grounds and issue an order reflecting its ruling.

The general grounds provide trial courts with broad discretion to grant a new trial "[i]n any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity" and "in cases where the verdict may be decidedly and strongly against the weight of the evidence." OCGA §§ 5-5-20, 5-5-21. "When the record reflects that the trial court reviewed the motion for new trial *only* for legal sufficiency of the evidence, the trial court has failed to exercise its discretion under the general grounds." *Casey v. State*, 310 Ga. 421, 425 (2020) (cleaned up) (citation omitted).

The trial court's order references the general grounds but it fails to show that the trial court actually exercised its discretion

---

[4] For the same reasons, the evidence is sufficient to support Smith's conviction for possession of a firearm during commission of a felony. Since it is undisputed that Arnold was killed by a gunshot, and since the evidence supported the jury's finding that Smith was the shooter, a jury would have been authorized to find that Smith possessed a firearm during the commission of the murder.

under those grounds. Moreover, despite its reference to the general grounds, the trial court order discusses only the sufficiency of the evidence and applies only the familiar *Jackson v. Virginia*[5] standard for evaluating sufficiency claims. Thus, as the parties agree, this order reflects that the trial court failed to exercise its discretion as it was required to do under the general grounds. See *Casey*, 310 Ga. at 425; *Manuel v. State*, 289 Ga. 383, 386-87 (2011).

Because the trial court failed to exercise its discretion under the general grounds, we vacate the denial of Smith's motion for new trial and remand the case to the trial court with direction that it exercise its discretion pursuant to OCGA §§ 5-5-20 and 5-5-21 and issue an order that reflects its ruling. We express no opinion regarding how the trial court should exercise its discretion on remand. That decision is for the trial court to make. On this issue, we simply hold that the trial court has failed to exercise its discretion to rule on the motion for new trial on the general grounds and that it should do so on remand. See *Casey*, 310 Ga. at 425 (vacating and remanding the trial court's order denying the appellant's motion for new trial because the trial court failed to exercise its discretion under the general grounds).

*Judgment affirmed in part, vacated in part, and case remanded with direction. All the Justices concur, except Warren, P.J., not participating.*

---

[5] *Jackson v. Virginia*, 443 US 307 (1979).